627 F.2d 534
 201 U.S.App.D.C. 75
 Samuel C. PENNINGTON, Petitioner,
v.
UNITED STATES POSTAL SERVICE, Respondent,
Magazine Publishers Association, Inc., Time Incorporated,
American Newspaper Publishers Association and the National
Newspaper Association, The American Business Press, Inc.,
Dow Jones and Company, Inc., Intervenors.
 No. 78-1899.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Dec. 10, 1979.
Decided June 26, 1980.
Rehearing Denied July 24, 1980.
 
 David R. Straus, Washington, D. C., with whom James N. Horwood, Washington, D. C., was on brief, for petitioner.
 Frances G. Beck, Asst. Gen. Counsel, U. S. Postal Service, Washington, D. C., with whom Louis A. Cox, Gen. Counsel, and Frank R. Heselton, Jr., William L. Fang, Attys., U. S. Postal Service, Ronald R. Glancz, Atty., U. S. Dept. of Justice, Washington, D. C., were on brief, for respondent.
 
 
 1
 Raymond N. Shibley, Washington, D. C., with whom Brian D. O'Neill, Washington, D. C., Paula A. Jameson, New York City and Richard Littell, Washington, D. C., were on brief, for intervenors Dow Jones & Co., Inc. and American Newspaper Publishers Ass'n, et al.
 
 
 2
 Justin R. Wolf, Louise C. Powell, and John M. Burzio, Washington, D. C., were on brief, for intervenors Time Inc. and Magazine Publishers Ass'n, Inc.
 
 
 3
 Stephen M. Feldman, Washington, D. C., for intervenor American Business Press, Inc.
 
 
 4
 Before TAMM and MIKVA, Circuit Judges, and HAROLD H. GREENE,* U. S. District Judge for the District of Columbia.
 
 
 5
 Opinion for the court filed by Circuit Judge TAMM.
 
 TAMM, Circuit Judge:
 
 6
 This case involves the preferential "red-tag" service afforded qualifying senders of second class mail under United States Postal Service regulations. Petitioner Samuel C. Pennington, publisher of a monthly antiques magazine, asserts that the present provision for red-tag service is unlawfully discriminatory under 39 U.S.C. § 403(c) (1971), and on that basis appeals a 1978 decision of the Board of Governors of the Postal Service upholding these regulations. More recently, the Board has directed the Postal Rate Commission to reexamine the question of red-tag service; this proceeding is now underway. We believe the application in the new proceeding of cost methods approved subsequent to the close of the decision appealed here will clarify the issues concerning red-tag service. Accordingly, we do not rule on Pennington's claim at this time but remand the case to the Board of Governors to allow the Postal Rate Commission to hear Pennington's claims in the new proceedings.I.
 
 
 7
 The United States Postal Rate Commission (Rate Commission)[1] established four dockets, MC76-1 to -4, in 1976 to consider postal classification changes in the four classes of mail service.[2] In MC76-2, the proceeding on second class service classifications, questions arose concerning red-tag service afforded second class mailers. Red-tag pieces receive expedited handling, distribution, and delivery, similar to that afforded first class mail, at no additional charge above the usual second-class rate. The Postal Service offers this mail schedule to provide speedy delivery of time-value materials such as newspapers or periodicals, and to be eligible, a mailer must supply "news of general interest" in a periodical published at least once a week. The costs of this service are borne by all second class mailers.[3]
 
 
 8
 An Administrative Law Judge heard evidence in Docket MC76-2. On the question of red-tag service, the officer of the Commission (OOC), charged with representing the public,[4] recommended dropping the eligibility requirements for red-tag service, thereby making the service available to all second class mailers. He presented evidence indicating that a surcharge of two cents per piece would cover the added costs of delivery. Other participants at the hearing opposed this proposal, disputing the OOC's cost estimates and contending that red-tag mail is less expensive to the Postal Service due to extensive presorting by red-tag mailers.
 
 
 9
 The Administrative Law Judge hearing the matter resigned before the hearings closed. The Commission therefore, pursuant to 5 U.S.C. § 577(b) (1976) and 39 C.F.R. § 3001.39(b) (1979), decided to issue a tentative decision based on the evidence in the record and briefs submitted by interested parties, with an opportunity for parties to file exceptions. The Rate Commission closed the record in May of 1977, and the following September the Commission issued its tentative decision. It rejected the OOC's proposal to expand red-tag service to all second class mailers. The Commission rejected the OOC's cost estimates, presented through proxy data,[5] as "inherently and critically deficient," Mail Classification Schedule, 1976, No. MC76-2, at 10 (P.R.C. Sept. 16, 1977) (tentative decision), reprinted in Joint Appendix (J.A.) at 36, 46, and concluded:
 
 
 10
 the OOC's proposal for a red-tag surcharge must be rejected on the record before us. At the same time we are not convinced that the existing eligibility requirements should be relaxed and the service made available to other second-class mail in the absence of more precise information regarding its present and potential costs.
 
 
 11
 Id. at 11, reprinted in J.A. at 47.
 
 
 12
 A week after the Commission issued its tentative decision, petitioner Pennington, the publisher of the monthly Maine Antique Digest, sought to intervene. Because the magazine does not appear weekly, it was not eligible for red-tag service. Pennington argued that the service should be expanded to all second class mailers. He claimed that denial of this service injured him economically because advertisers of time related notices shunned his publication in favor of weekly antique journals, which due to red-tag service received faster and more reliable delivery. He also claimed that the "associations have sold (the Commission) a bill of goods" about the cost savings due to mailers' presorting: postal regulations, he asserted, required presorting of all second class materials. J.A. at 29-30 (Pennington's petition).
 
 
 13
 On November 8, 1977, the Rate Commission granted Pennington's request to intervene. Mail Classification Schedule, 1976, No. MC76-2 (P.R.C. Nov. 8, 1977) (order granting intervention), reprinted in J.A. at 62. Given the tardiness of the request, however, the Commission limited Pennington's participation to filing exceptions to the tentative decision. The Commission also allowed other interested parties to file briefs in opposition to Pennington's exceptions.
 
 
 14
 During the same period, the Commission also was conducting a general rate proceeding, Docket No. R77-1, to evaluate rates and fees charged for all classes of mail. In the course of this proceeding, the Commission adopted a cost-of-service means of allocating the costs of operations among the different classes of mail. This approach enables the Commission to adjust rates to ensure that each class of mail receives sufficient revenues to cover the costs of delivering that class. The Commission issued its decision in R77-1 on May 12, 1978, and the Governors approved the recommended decision one week later.
 
 
 15
 Two filings in MC76-2 arose from the proceeding in R77-1. First, before the decision in R77-1, the OOC petitioned the Commission to reopen the record in MC76-2 to introduce the testimony of Pennington before the Commission in R77-1. See J.A. at 69-76. This testimony bolstered the OOC's contention that the criteria for red-tag service discriminated against certain second class mailers. Later, after the R77-1 decision, Pennington himself filed a petition with the Commission to create a surcharge for red-tag service that allocated costs to users based on the cost of that service. See id. at 118-20.
 
 
 16
 The Commission rejected both proposals in its final decision, which basically adopted the findings and conclusions of the tentative decision. Mail Classification Schedule, 1976, No. MC76-2 (P.R.C. June 16, 1978) (opinion and recommended decision after exceptions), reprinted in J.A. at 151. The Commission upheld the decision allowing Pennington to intervene but denied the OOC's request to allow Pennington's testimony to be admitted into the record. It found that "no useful purpose would be served" by granting the motion and that "(t)he material adds little insight to the resolution of the major issues involved in this proceeding and would not affect our conclusions or final disposition." Id. at 19-20, reprinted in J.A. at 170-71.
 
 
 17
 Despite this action, the Commission did acknowledge that the Postal Service recently had adopted a cost-of-service method of calculating costs and noted its possible application to red-tag service. The Commission therefore suggested reexamination of the surcharge question from a cost-of-service perspective and "request(ed) the Service to apprise us of the results of such a re-examination in the new proceeding we will shortly institute . . . ." Id. at 21, reprinted in J.A. at 172. That proceeding, Docket No. MC79-3, is underway now.
 
 
 18
 On review, the Governors of the Postal Service agreed with the Commission that the officer failed to justify his request for making red-tag service available to all second class mailers. Mail Classification Schedule, 1976, No. MC76-2 (Govs. of U.S.P.S. Sept. 7, 1978). They similarly rejected the companion request to impose a surcharge for red-tag service. Pennington, pursuant to 39 U.S.C. § 3628 (1976),[6] appeals to this court for relief.
 
 II.
 
 19
 Pennington contends that the present qualification criteria for red-tag service discriminate unreasonably against second class mailers that do not meet the rule's requirements. Pennington believes this discrimination violates the general duty of the Postal Service to avoid "undue or unreasonable discrimination" under 39 U.S.C. § 403(c).[7] He asks this court to overturn the Governors' decision regarding red-tag service and remand for appropriate relief.
 
 
 20
 As a threshold question, the Postal Service asserts that Pennington lacks standing to bring this appeal. The relevant statute allows only "an aggrieved party who appeared in the proceedings under section 3624(a)" to appeal a ruling by the Governors. 39 U.S.C. § 3628 (1976). The Postal Service argues that Pennington's failure to participate in the hearings on the record means he never "appeared in the proceedings" within the meaning of the section. Having not so appeared, he is not an "aggrieved party" who may appeal a decision by the Governors.
 
 
 21
 We reject this definitional legerdemain and conclude instead that Pennington indeed has standing to raise his claims before this court. A "proceeding" mandated by section 3624(a) may take several forms. It may be conducted on the record pursuant to sections 556 and 557 of the Administrative Procedure Act, 5 U.S.C. §§ 556-557, see 39 id. § 3624(a), or, in accordance with Postal Service rules, off the record if the parties so agree, see id. § 3624(b)(5). This flexible view of a section 3624(a) "proceeding" belies the Postal Service's narrow construction of the term.
 
 
 22
 Moreover, the Commission allowed Pennington to intervene to file exceptions to its tentative decision. This order indicates that Pennington, albeit within certain imposed restrictions, could participate in the proceeding. In fact, he did so: he filed a petition with the Commission to impose a surcharge for red-tag delivery based on its service-related costs. Given Pennington's intervention and subsequent participation in docket MC76-2, we conclude that Pennington did "appear in the proceedings under section 3624(a)" and thus has standing.
 
 
 23
 Furthermore, Pennington clearly qualifies as an "aggrieved party" with standing to appeal. To be "aggrieved," a party must suffer an "injury in fact" to an interest "arguably within the zone of interests to be protected or regulated" by the provision at issue. See Association of Data Processing Service Organizations v. Camp, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970). The Governor's decision injures Pennington because he cannot obtain red-tag service for his magazine, and he must look to postal authorities to obtain relief because they regulate the mail services. Accordingly, we find that Pennington has standing to pursue his arguments in this court.
 
 III.
 
 24
 Standing, however, does not always guarantee that other jurisprudential concerns do not militate against a decision on the merits. In this case, other proceedings now underway before the Commission may provide a better forum for airing Pennington's claims. Therefore, we conclude that a remand for further consideration in conjunction with those proceedings would be more likely to serve a full, fair, and expeditious resolution of the issues involved.
 
 
 25
 During the pendency of this suit, this court issued its opinion upholding the orders of the Governors of the Postal Service in R77-1. See National Association of Greeting Card Publishers v. United States Postal Service (NAGCP II), 607 F.2d 392 (D.C.Cir. 1979), cert. denied, 444 U.S. 1025, 100 S.Ct. 688, 62 L.Ed.2d 659 (1980). In that decision, we expressed concern over possible discrimination in the provision of red-tag service:
 
 
 26
 We agree . . . that assignment of service related costs to mail not receiving preferential service raises serious concerns of discrimination. . . . (W)e have accepted, at least for this case, the (Commission's) adoption of a model based on a dichotomy between preferential and nonpreferential mail, even though that distinction may not entirely reflect actual service priorities. But the failure to distinguish in the assignment of costs between preferential and nonpreferential mail goes contrary to the (Commission's) own model.
 
 
 27
 Id. at 411 (footnotes omitted). Nevertheless, we deferred consideration of the matter pending the outcome of the Commission's reexamination of red-tag service in MC79-3.[8]
 
 
 28
 We believe MC79-3 the proper forum in which to resolve questions concerning red-tag service. Pennington entered the MC76-2 proceeding late and did not have the opportunity to raise questions concerning discrimination or the anticompetitive effects of the present service. Furthermore, the cost information presented by both sides in this controversy did not fully explain how the asserted additional costs of red-tag service affect all second class mailers generally and whether this amounts to unlawful discrimination. We believe the application of service cost methods discussed in NAGCP II should help resolve the questions concerning red-tag service. Accordingly, we remand this case to the Board of Governors to allow petitioner Pennington to raise his claims and proposals about red-tag service in Docket MC79-3.
 
 
 29
 It is so ordered.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. § 292(a) (1976)
 
 
 [1]
 Congress created the United States Postal Rate Commission in the Postal Reorganization Act of 1970, Pub.L.No.91-375, 84 Stat. 749 (codified at 39 U.S.C. §§ 101-5605 (1976)). The Rate Commission is an independent executive agency that hears evidence on "changes in a rate or rates of postage or in a fee or fees for postal services" offered by the Postal Service and interested private parties. 39 U.S.C. § 3622(a). It makes its recommendations to the Board of Governors of the Postal Service
 
 
 [2]
 The proceedings have a rather convoluted history. The Rate Commission originally established Docket MC73-1 to consider a wide range of postal classification questions. It envisioned three phases for the proceeding: Phase I to deal with proposed changes in the classification scheme advanced by the Postal Service, Phase II to hear proposed classification changes by other parties, and Phase III to resolve questions of "basic reform." Mail Classification Schedule, 1976, No. MC76-2 at 1 (P.R.C. Sept. 16, 1977) (tentative decision), reprinted in Joint Appendix (J.A.) at 36, 37. The Rate Commission ended Phase I in 1976. Instead of continuing with Phases II and III, the Rate Commission instituted MC76-1 through -4 to hear issues of first- through fourth-class classification structure. Id. at 2, reprinted in J.A. at 38
 
 
 [3]
 Forty percent of all second class mailers qualified for red-tag service under the Postal Service regulations
 
 
 [4]
 By statute, the Commission must appoint an officer as public ombudsman "to represent the interests of the general public" in hearings before the Rate Commission. 39 U.S.C. § 3624(a) (1976)
 
 
 [5]
 Direct information on the costs for expedited second class handling was not available, so the OOC presented evidence of the cost of expedited service for other classes of mail as a proxy
 
 
 [6]
 Section 3628 states in relevant part:
 A decision of the Governors to approve, allow under protest, or modify the recommended decision of the Postal Rate Commission may be appealed to any court of appeals of the United States, within 15 days after its publication by the Public Printer, by an aggrieved party who appeared in the proceedings under section 3624(a) of this title. . . . The court may affirm the decision or order that the entire matter be returned for further consideration, but the court may not modify the decision.
 39 U.S.C. § 3628 (1976). This section limits the possible relief the court could grant Pennington.
 
 
 [7]
 This subsection provides in full: "In providing services and in establishing classifications, rates, and fees under this title, the Postal Service shall not, except as specifically authorized in this title, make any undue or unreasonable discrimination among users of the mails, nor shall it grant any undue or unreasonable preferences to any such user." 39 U.S.C. § 403(c) (1976)
 
 
 [8]
 The court in NAGCP II upheld the use of service-related cost methods to allocate the costs of different classes of mail. It also recommended the use of these cost methods in resolving the question of undue discrimination in red-tag service:
 In Docket No. MC76-2, the Commission recently rejected a proposed surcharge on red tag mail, as well as a proposal to eliminate the current restriction on the availability of red tag to periodicals with a frequency of once a week or more. The Governors affirmed this aspect of the Commission's recommended decision, but rejected a recommendation that red tag be incorporated into the Domestic Mail Classification Schedule as a separate subclass of second-class. Both decisions indicated that a reexamination of the question would be appropriate in light of the adoption subsequent to the development of the record in that proceeding of the service related cost methodology. The (Rate Commission) has recently initiated a proceeding, Docket No. MC79-3, to undertake that reexamination.
 National Assoc. of Greeting Card Pub. v. United States Postal Service, 607 F.2d at 412 (emphasis added) (footnotes omitted).