**READER'S DIGEST ASSOCIATION, INC., Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE, Defendant,**

**Dow Jones & Company, Inc., Newsweek, Inc., Time Incorporated, Intervenor/Defendants.**

**Civ. A. No. 80–2265.**

United States District Court, District of Columbia.

Oct. 17, 1980.

———

Timothy J. May, David C. Todd, Steven M. Schneebaum, Patton, Boggs & Blow, Washington, D. C., Whitney M. Adams, Asst. U. S. Atty., Washington, D. C., Frances G. Beck, William L. Fang, Washington, D. C., Justin R. Wolf, Louise C. Powell, George H. Rothschild, Jr., Washington, D. C., Counsel for defendant–intervenor, Time Inc.

Stephen M. Truitt, Robert A. Skitol, Washington, D. C., Counsel for defendant–intervenor, Newsweek, Inc.

Raymond N. Shibley, Washington, D. C., Counsel for defendant–intervenor, Dow Jones & Co., Inc.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge.

This proceeding involves a challenge to an order of the Board of Governors of the United States Postal Service implementing classification and rate schedules for second class mail. The plaintiff Reader's Digest Association seeks injunctive relief compelling the Postal Service to implement immediately newly announced postal rates for certain types of second class mail. The rates at issue generally apply to magazines and newspapers and are to become effective in June of 1981. The rate schedule currently in effect imposes the same rates regardless of the treatment accorded the publication. Under the newly announced rates, publications such as daily newspapers and weekly magazines which receive special

preferential handling, known as "red–tag" mail, would be charged 2.3 cents more per item than materials receiving regular second class treatment. Such mail is expedited and in the industry is considered as receiving time value service. Reader's Digest is a monthly publication subject to second class mail rates. However, it is not a "red–tag" mailer, and under the new schedule its per item rate would be lower. It argues that the decision of the Board of Governors delaying the implementation of the new rates some 9½ months–until June 1, 1981–effectively nullifies the new rates, is arbitrary, an abuse of discretion, and outside of the Board's authority.

Defendant Postal Service has opposed the motion for preliminary relief asserting that the Board has properly exercised its authority under the Postal Reorganization Act, 39 U.S.C. § 3625(f). Three large volume "red–tag" mailers, Time, Inc., Newsweek, and Dow Jones, were allowed to intervene as party defendants. They have moved that the Reader's Digest complaint be dismissed and argue that under the statute jurisdiction over rate schedule matters lies exclusively in the United States Courts of Appeals.[1] After reviewing the parties' points and authorities, and with the benefit of oral argument, the Court concludes that the complaint should be dismissed for lack of jurisdiction.

The Postal Reorganization Act, 39 U.S.C. § 101, *et seq.*, established a three–step process for setting new postal rates. The Postal Service makes any request for a change in permanent rates to the Postal Rate Commission (Commission), an independent five–member body appointed by the President with the advice and consent of the Senate. The Commission considers the request in light of statutory criteria for fixing rates and then submits a recommended decision to the Governors of the Postal Service. The Governors, a nine–member body also appointed by the President with the advice and consent of the Senate, "may approve,

allow under protest, reject or modify" the recommended decision of the Commission. *Id.* at § 3625. Should the Governors determine that new rates are to be put in effect, the Board of Governors—a separate body composed of the Governors plus the Postmaster General and his Deputy—sets the actual date of implementation. *Id.* at § 3625(f).

This controversy arose when the Commission recommended that second class mail rates be modified to include a differential between red–tag and non red–tag items. The Commission's action stemmed in large measure from an observation in an opinion of our Court of Appeals, *National Association of Greeting Card Publishers v. United States Postal Service*, 607 F.2d 392 (D.C. Cir. 1979), *cert. denied*, 444 U.S. 1025, 100 S.Ct. 688, 62 L.Ed.2d 659 (1980) (*NAGCP III*) that "the assignment of service related costs to mail not receiving preferential service raises serious concerns of discrimination." 607 F.2d at 411. Reacting to this statement, in January of 1979 the Commission initiated proceedings to consider red–tag rates.[2] On May 16, 1980, it issued an opinion and decision recommending the adoption of a differential of 2.3 cents between red–tag and non–red–tag mail.

The Commission's opinion concluded that "[t]his discrimination must be remedied now; we cannot defer the matter any longer."[3] Under the new rates, plaintiff's cost would be 1.1 cents lower per item than under the present schedule. Intervenors would face a 1.2 cents per item increase. On July 1, 1980 the Governors publicly announced that the recommended decision would be approved. It .was not until August 15, however, that the Governors issued their written decision approving the new rate. On the same date, the Board approved a resolution providing that the new rates would become effective on June 1, 1981. Neither the Governor's decision nor the Board's resolution mentions the alleged-

1. 39 U.S.C. § 3628. This provision is set out and discussed *infra*.

2. Postal Rate Commission Docket No. MC79-3.

3. *Id.* Opinion and Recommended Decision at 12. (May 16, 1980).

ly "illegal" or unduly "discriminatory" nature of the existing flat rate.[4] Plaintiff shortly thereafter petitioned the District of Columbia Circuit Court of Appeals for review of the Governor's decision pursuant to 39 U.S.C. § 3628. Intervenors also sought review in filings with the Second and Third Circuits.[5] All of the petitions have since been consolidated in the Third Circuit where the first of the several review petitions was filed. In this proceeding, however, Reader's Digest requests immediate implementation of the new rates by this Court on the grounds that the current schedules are unlawfully discriminatory and require immediate correction.

The Court's first concern must be its jurisdiction to grant the relief plaintiff has requested. Jurisdiction over rate matters generally is covered by 39 U.S.C. § 3628. That section provides:

A decision of the Governors to approve, allow under protest, or modify the recommended decision of the Postal Rate Commission may be appealed to any court of appeals of the United States, within 15 days after its publication by the Public Printer, by an aggrieved party who appeared in the proceedings under section 3624(a) of this title. The court shall review the decision, in accordance with section 706 of title 5, and chapter 158 and section 2112 of title 28, except as otherwise provided in this section, on the basis of the record before the Commission and the Governors. The court may affirm the decision or order that the entire matter be returned for further consideration, but the court may not modify the decision. The court shall make the matter a preferred cause and shall expedite judgment in every way. The court may not suspend the effectiveness of the changes, or otherwise prevent them from taking effect until final disposition of the suit by the court. No court shall have jurisdiction to review a decision made by the Commission or Governors under this chapter except as provided in this section.

While this provision explicitly says that review of Governor's decision on rate matters lies in the Court of Appeals, plaintiff finds comfort in what it does not say: it does not expressly remove jurisdiction over decisions of the *Board* of Governors from the District Courts. Citing the well–known principle that agency actions are presumptively reviewable in the absence of a statute explicitly withdrawing review, *see Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977), plaintiff concludes that District Courts have jurisdiction to hear other matters. Since Reader's Digest is not asking the court to consider the merits of the new rates but only the abuse of discretion in setting the date of their implementation, it argues the Court may proceed to hear the claim for injunctive relief without fear of encroaching on the exclusive jurisdiction of the Courts of Appeals in substantive rate matters.[6]

The Postal Service does not contest the Court's jurisdiction over this matter. Instead, it argues in opposition to the motion for a preliminary injunction that examination of the Board's action will demonstrate that the decision to delay implementation of the new rates is a lawful exercise of the discretion granted to the Board. In their motions to dismiss, however, intervenors challenge plaintiff's assertion that this Court can pass on the propriety of the Board's action without becoming enmeshed

---

**4.** Decision of the Board of Governors Re Recommended Decision of the Postal Rate Commission on Red–Tag Mail (August 15, 1980); Board of Governors Resolution 80–6 (August 15, 1980).

**5.** Intervenors have petitioned for review of the new rates contending that the differential is unwarranted. In its appeal plaintiff claims it is too small.

**6.** Reader's Digest cites several bases for jurisdiction: 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1339 (granting district courts jurisdiction over civil actions under any act of Congress relating to the postal service); 28 U.S.C. §§ 2201–02 (Declaratory Judgment Act); 5 U.S.C. §§ 701–06 (Administrative Procedure Act); 39 U.S.C. § 409 (granting district courts original jurisdiction over suits by and against the postal service, except as otherwise provided in 39 U.S.C. § 3628); and the Fifth Amendment.

in the dispute over the substance of the proposed changes in rates.

Plaintiff understates the nature of its request for relief. Reader's Digest has asked injunctive relief to remedy the arbitrary decision of the Board in delaying implementation of new rates. In considering the availability of a preliminary injunction, this Court must, of course, consider the likelihood of plaintiff's success on the merits. *Virginia Petroleum Jobbers v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958). Plaintiff asserts that the merits are the propriety of the *Board's* action; delaying relief is an abuse of discretion in that the existing rates are undeniably unlawful and discriminatory. According to plaintiff, the "fact" of illegality is established by the Court of Appeals observation in *NAGCP III* and by the Commission's opinion in the red–tag proceeding. The plaintiff, however, misreads those opinions. The Court of Appeals, for all its disapprobation, did not explicitly brand the current flat rate either unlawful or discriminatory. 607 F.2d at 411–12.[7] The Commission's opinion is only a recommendation to the Governors, who alone hold the actual authority to set rates. Significantly, the Governors' decision makes no such finding concerning the current schedule.

Moreover, both the Postal Service and the intervenors challenge the assertion that the present rate is unlawful. Intervenors, who are on the short end of the differential recommended by the Commission, claim it is the new rate that is discriminatory and they in fact have challenged the rate schedule in the pending consolidated appeals before the Third Circuit.

It is clear from the present posture of this litigation that it presents issues which are inextricably interwoven with those now before the Third Circuit. Since the present schedule has never been held to be unlawful and the proposed one has not yet been judicially approved, this Court would be required to assess the merits of these questions in order to grant the relief requested. This would draw the Court into territory reserved exclusively to the Court of Appeals and in addition violate the "well–settled" principle that "bifurcated jurisdiction between District Court and Court of Appeals over identical litigation is not favored." *Oljato Chapter of Navajo Tribe v. Train*, 515 F.2d 654, 660 (D.C. Cir. 1975) (footnote omitted); *see Independent Cosmetic Manufacturers v. HEW*, 574 F.2d 553, 555 (D.C. Cir. 1978). The Court will therefore dismiss this action for lack of jurisdiction.

---

7. Despite its disapproval, the Court of Appeals in *NAGCP III* noted that "[t]here is some doubt whether this issue [the need for a differential] was fully ventilated in the proceedings before the Commission." 607 F.2d at 411. In a subsequent case, *Pennington v. United States Postal Service*, 627 F.2d 534 (D.C. Cir., 1980), the Court of Appeals again considered the present rates on second class mail but declined to hold them to be unlawful. Instead it reiterated its concern over "possible discrimination in the provision of red–tag service" and remanded the matter to the Commission for consideration as part of the pending red–tag proceeding before that body. 627 F.2d at 539.