**DIRECT MAIL/MARKETING ASSOCIATION, INC., Plaintiff,**

**v.**

**UNITED STATES POSTAL SERVICE, Defendant.**

No. 81 Civ. 6301.

United States District Court, S. D. New York.

Oct. 29, 1981.

**1220**

Robert L. Sherman, Weil Guttman & Davis, New York City (Wood & Dawson, Donald Gurney, New York City, of counsel), Dana T. Ackerly, Covington & Burling, Washington, D. C. (Spiegel & McDiarmid, David R. Straus, Washington, D. C., of counsel), for plaintiff.

John S. Martin, U. S. Atty., New York City (Daniel J. Foucheaux, Jr., Susan Duchek, New York City, of counsel), for defendant.

## MEMORANDUM OPINION AND ORDER

SOFAER, District Judge:

Plaintiff Direct Mail/Marketing Association, Inc. ("DMMA") is an association with approximately 2600 member companies and is the largest organization representing firms involved in marketing by mail. The member companies of DMMA are substantial users, directly or indirectly, of third-class bulk-rate regular mail. DMMA was a party in interest and participated in a postal rate proceeding before the Postal Rate Commission (the "Commission") known as Docket No. R80-1, the proceeding that led to the order under review here. DMMA is incorporated as a not-for-profit corporation under the laws of the State of New York.

Defendant United States Postal Service (the Postal Service) is an independent establishment of the executive branch of the Government of the United States that provides essential postal services throughout the United States. Intervenor Advertisers Distribution Services, a Division of Consumer Information Enterprises, Inc., is a Minnesota corporation that provides delivery services for publications at various points in eastern Minnesota and western Wisconsin. Intervenor Advertisers Postal Service, Inc. is a Michigan corporation that provides delivery services throughout Michigan. Both of these services' applications to intervene are granted.

The Postal Service is directed by an eleven-member Board of Governors ("Board"). The Board consists of nine "Governors" who are appointed by the President with the advice and consent of the Senate, and two postal executive managers, the Postmaster General and Deputy Postmaster General. 39 U.S.C. § 202. The Governors are responsible for establishing postal rates and fees that will be sufficient to enable the Postal Service to serve the needs of the nation. 39 U.S.C. § 3621. Such postal rates and fees must raise sufficient revenues to meet as nearly as possible the costs of the Postal Service. *Id.*

On April 21, 1980, the Postal Service requested the Commission to recommend rate changes for virtually all classes of mail and types of mail service. The Postal Service's request was docketed as Commission Docket No. R80-1. On February 19, 1981, the

Commission issued and transmitted to the Governors its initial recommended decision in Docket No. R80–1. The Commission recommended numerous rate changes, including an increase to 18 cents in the rate for first-class letter mail. The Commission also recommended that the classification of bulk third-class mail be changed, although the Postal Service had not proposed a change in the existing classification of this mail. The Commission did not recommend rates conforming to the existing classification, but only rates predicated upon its proposed classification change.

On March 10, 1981, the Governors exercised their option under 39 U.S.C. § 3625(c)(2) to allow most of the Commission's recommendations to take effect, under protest, and to return them to the Commission for reconsideration and a further recommended decision. The Governors rejected the Commission's recommended classification change for third-class bulk mail. The Governors claimed that, since the Commission's recommended third-class rates were predicated upon the Commission's classification change, the Commission had in effect failed to make a "recommended decision," within the time period required by the statute. The Governors therefore purported to exercise their prerogative under 39 U.S.C. § 3641(a) to establish temporary third-class rates, asserting that the Commission had failed to make a recommended decision.

Several businesses specializing in the delivery of advertising materials sued the Postal Service in the United States District Court for the District of Columbia Circuit to enjoin the temporary bulk third-class rates established by the Governors on March 10, 1981. The District Court denied plaintiffs' motions for a temporary restraining order and a preliminary injunction, finding that the Board of Governors had acted lawfully in implementing the temporary rates. *Advertisers Distribution Services v. United States Postal Service*, No. 81–0681 (D.D.C. March 26, 1981). Subsequently, the court granted the Postal Service's motion to dismiss for lack of subject matter jurisdiction, noting the pendency of appeals of the Governors' decision in the Court of Appeals, and citing the principle that bifurcated jurisdiction by the District Court and the Court of Appeals over identical litigation is not favored. *Advertisers Distribution Services v. United States Postal Service*, (D.D.C. July 7, 1981), *appeal docketed*, No. 81–1859 (D.C.Cir., July 30, 1981).

Review of the Governors' March 10 decision is also currently pending before the Court of Appeals for the Second Circuit, where oral argument was heard on August 13, 1981. DMMA is a party intervenor to that proceeding. One of the issues before that Court is whether the Governors' treatment of the bulk third-class rates that the Commission had recommended comported with the correct interpretation of 39 U.S.C. § 3625.

On June 4, 1981, the Commission issued its Recommended Decision Upon Reconsideration in Docket No. R80–1, in which it reaffirmed all but one of the rate recommendations made in its initial recommended decision, including its recommendations that the rate for the first-class letter mail be 18 cents for the first ounce and that new third-class classifications be established.

On June 30, 1981, the Governors issued their decision concerning the Commission's Recommended Decision Upon Reconsideration in Docket No. R80–1. The Governors stated (at page 16):

> The Postal Rate Commission's Recommended Decision upon Reconsideration dated June 4, 1981, is rejected. The rate, fee and classification changes ordered into effect in the Decision of the Governors of March 10, 1981, will remain in force.

A review of the Governors' Decision issued June 30, 1981, and dated June 29, 1981, is currently pending before the District of Columbia Circuit. *Advertisers Distribution Services et al. v. United States Postal Service*, Docket No. 81–1831 (D.C. Cir., filed July 24, 1981). One of the issues before that Court is whether the Governors' Decision issued June 30 was a valid rejection of

all the Commission's rate recommendations, including those for third-class bulk rate regular mail. The Postal Service has moved to dismiss that appeal on the ground that the Governors' decision was a rejection under 39 U.S.C. § 3625 and therefore not subject to review under 39 U.S.C. § 3628.

On September 17, 1981, the Commission issued its Recommended Decision Upon Further Reconsideration in Docket No. R80–1. The Commission once again reaffirmed the rate recommendations it had made on June 4, including its recommendation that new third-class classifications be established.

On September 30, 1981, the Governors issued their Decision, dated September 29, 1981, in which they directed the Postal Service to place into effect new postal rates, including a first-class letter mail rate of 20 cents for the first ounce, and the bulk third-class rates that the Postal Service had originally requested from the Commission in April 1980. Although the Commission's action of September 17, 1981, was identical with respect to third-class rates to its action of February 19, 1981, the Governors treated the September 17 action as a "recommended decision" and proceeded to "modify" the proposed rates, pursuant to 39 U.S.C. § 3625(d). The Governors also announced their finding that the rates recommended by the Commission would not provide sufficient revenues for the Postal Service to meet its costs. Thereafter, the Board of Governors resolved that the new postal rates announced by the Governors in their Decision dated September 29, 1981, would become effective on November 1, 1981. Numerous petitions for review of the Governors' September 29 decision are currently pending before the Court of Appeals for the Second Circuit. DMMA has intervened in several of those appeals.

DMMA argues that the Governors' purported modification of September 29, 1981 could not have been made under 39 U.S.C. § 3625, since the Governors did not have before them at that time any "recommended decision" of the Commission. DMMA further alleges that it has no adequate remedy at law, that it will suffer irreparable damages of increased postage costs and lost business, that the Postal Service will not be harmed if the new third-class bulk mail rates are enjoined since no revenue will be lost, and that for these reasons the Court should issue a preliminary injunction barring the Postal Service from implementing the new third-class bulk mail rates.

The Postal Service argues in response that the Court lacks jurisdiction over a challenge to a Governors' decision issued pursuant to 39 U.S.C. § 3625, because of the clear language of 39 U.S.C. § 3628 reserving jurisdiction over such proceedings to the courts of appeals. Furthermore, the Service contends, section 3628 precludes this Court from enjoining any permanent rate change on a preliminary basis. Even if the Court had jurisdiction to entertain this action, the Service urges that plaintiff has shown neither irreparable harm nor the existence of any sufficiently serious questions on the merits making them a fair ground for litigation, and that both the Postal Service and the public would be so injured by issuance of an injunction that the balance of hardships tips decidedly against granting the preliminary injunction that DMMA seeks. *Caulfield v. Board of Education*, 583 F.2d 605, 610 (2d Cir. 1978).

## I. Jurisdiction

Plaintiff argues that this Court has jurisdiction because the Governors could not have acted under section 3625, since the Commission did not make any "recommended decision" that the Governors could "modify." Consequently, plaintiff contends, the new rates established by the Governors could only be rates adopted pursuant to section 3641, which provides for the adoption of temporary rates by the Governors when the Commission fails to make any "recommended decision." In effect, plaintiff argues that what the Governors have done is to promulgate "temporary" rates, even though they purported to promulgate permanent "modified" rates.

Had the Governors in fact purported to promulgate temporary rates, under section 3641, a district court would have jurisdiction to enjoin those rates in appropriate circumstances, and to review the legality of those rates under section 409(a). That is exactly what happened in April 1981, and the District Court and the District of Columbia in fact assumed jurisdiction to determine whether the Governors had properly construed the Commission recommendation as not constituting a "recommended decision," thereby giving the Governors authority to promulgate a temporary rate.

This case differs markedly. The Governors in this case have decided to treat the Commission's action as a recommended decision, claiming therefore that the rates the Governors have promulgated are permanent, modified rates. In this case, therefore, the Governors have purported to act under section 3625. In order to establish jurisdiction in this Court, under plaintiff's theory, it is necessary for plaintiff to claim not only that the Governors' action was unlawful but that the action was in fact the creation of temporary rates, pursuant to section 3641.

Plaintiff's position is that the Governors and the Service cannot have it both ways. If the Commission's action of February 19, 1981 failed to constitute a "recommended decision" for purposes of section 3641, then the Commission's identical action of September 17, 1981 must also fail to satisfy the Commission's obligation to issue a "recommended decision." As plaintiff summarizes its argument:

> The Governors' assertion of authority to act under Section 3625 does not create that authority. Based on uncontroverted facts, the threshold preconditions for action under Section 3625 do not exist with respect to BRR mail. In March, the Postal Service imposed temporary rates, because the PRC did not make a valid rate recommendation for BRR rates. The PRC never corrected the deficiencies in its recommendation; and the March BRR Rates remain in effect. The imposition of temporary rates is totally inconsistent with the existence of a valid PRC recommendation, which, in turn, is a precondition for the Governors' "modification" under Section 3625. At best, therefore, the November BRR Rates should be viewed as an attempted alteration in the "temporary" rates established in March.

Plaintiff's Brief, p. 5.

Even assuming, however, that the Governors' action in setting modified permanent rates was unlawful—because the Governors did not have before them a recommended decision—it does not follow that a district court could conclude that the Governors' action should be deemed action under section 3641, despite the Governors' characterization. The statute provides for exclusive review of all rates set by the Governors under section 3625 in the courts of appeal. This presumably includes all issues relating to the legality of such rates. If the Governors have in fact illegally adopted a permanent "modified" rate, then a court of appeals can readily so find. The Court of Appeals would presumably thereupon invalidate that rate; it would not go on to determine that the Governors had in fact acted under section 3641, and had set a temporary rate reviewable by a district court.

Nor is it clear that the Governors have in fact acted illegally by treating the Commission's action of September 17, 1981 as a "recommended decision" under section 3625. First, the Commission's action in fact purported to be a recommended decision. The Governors' treatment of the original Commission action as not constituting a recommended decision under section 3641(a) is far more questionable from both a logical and linguistic point of view than its present determination. Whether the Governors acted legally in treating the Commission's original action as not constituting a recommended decision under section 3641(a) is still uncertain. The Circuit Court of Appeals in the District of Columbia is yet to pass upon this question, and may well conclude that the Governors erred in acting in that manner. That consequence seems far more likely and sensible than a determina-

tion by the federal courts that the Governors have erred at this time in accepting the Commission's characterization of their action as a recommended decision.

Furthermore, as discussed at oral argument in this matter, it seems reasonable to permit the Governors to have treated the original Commission action as not constituting a recommended decision, for purposes of establishing temporary rates, and nevertheless to treat the final action of the Commission as constituting a recommended decision, for the purpose of establishing modified, permanent rates. At the time of the Commission's original recommendation, the Governors regarded the Commission's proposal to divide third-class mail into new classifications as having no basis in the record. In making that determination, at that stage in the administrative process, the Governors in effect called upon the Commission to make a recommendation that the Governors could treat as a recommended decision of the usual sort. At the same time the Governors enabled themselves to establish temporary rates and thereby to prevent the Postal Service from incurring losses, as Congress intended. Furthermore, little harm could have been created thereby to users, since section 3641 imposes upon the Governors a burden of establishing that the temporary rates "not exceed such amount as may be necessary for sufficient revenues to assure that the total estimated income, including appropriations, of the Postal Service shall, to the extent practicable, be equal to the total estimated costs of the Postal Service." Section 3641(b). Any such finding would be reviewable in the district courts, and the district courts would presumably have power both to enjoin such temporary rates and to grant damages for their illegal implementation. In fact, plaintiff in this lawsuit is arguing strenuously for this Court to assume jurisdiction by treating the Governors present action as a temporary change, because plaintiff claims the standard of review and the power of a district court to review rates under section 3641 are far more substantial than the power of circuit courts under section 3625. Thereafter, when the Commission reasserted its position, and refused to make a new recommendation concerning third-class rates, the Governors rejected outright the Commission action, treating it as a recommended decision, and thereby giving notice to the Commission (and to users) that, unless the Commission modified its action, the Governors would proceed to review the Commission determination under section 3625(d). In fact, the Commission again failed to modify its proposal, and the Governors once again treated the Commission action as a recommended decision.

At this later stage, the Commission has been given a full opportunity to make a more traditional recommendation, and has declined to do so. The Governors, under these circumstances, have reasonably determined that the Commission will take no action that more closely resembles a traditional recommendation, and have therefore treated the Commission determination as a recommended decision in order to permit the Governors to establish permanent rates reviewable in the manner contemplated by Congress. While the Governors' position now is hardly appealing as a logical matter, the ultimate consequence of its determinations is a result that seems practicable, sensible, protects all relevant interests, and advances two important legislative purposes: the avoidance of losses to the Postal Service, and the establishment of rates that are reviewable in the manner contemplated by Congress in the circuit courts.

■ Even assuming that a district court had jurisdiction to review the Governors' latest action, the government seems correct in contending that any such jurisdiction should not be exercised at this time. The legality of the Governors' most recent action in establishing permanent, modified rates under section 3625(a) is before the Court of Appeals for the Second Circuit. That Court will determine the legality of the Governors' determinations, and all parties having an interest in those issues have joined in that consolidated proceeding. In the unlikely event the Court of Appeals determines both that the Governors' action was in fact illegal, and further that the

Governors' action with respect to third class mail constitutes the establishment of a temporary change under section 3641, then the Second Circuit could readily remand the matter to this Court for review on the merits.

Plaintiff's claim that it cannot obtain effective review in that Court is frivolous. The Circuit Court could expedite plaintiff's contention that it stands in a different position than all other challengers of the Governors' most recent action, and the Court of Appeals could also rapidly reach a determination that the District Court had jurisdiction and thereby permit the entry of an injunction against the third class rates currently under challenge. In short, it is untenable to suggest that our courts of appeal could not rapidly conclude that the plaintiffs are entitled to some forms of relief other than those normally available for actions of the Governors under section 3625, and order those forms of relief either themselves or through the district courts.

## II. *Merits of the Motion for Preliminary Relief*

■ Some comments with respect to the merits of the litigation also seem appropriate, since plaintiff claims that the Governors have acted without any reasonable basis whatsoever. Plaintiff asserts, in fact: "This case involves the very first instance under the Postal Reorganization Act where a permanent rate increase is sought to be imposed upon a major class of mail without the support of a reasoned decision based upon all the evidence of record before the Postal Rate Commission." Plaintiff's Brief at 3. The Governors' decision in adopting permanent modified rates says very little about why the rates are "fully supported by evidence on the record," or why "they accurately reflect the actual costs of handling the mail while at the same time they make a substantial contribution to the recovery of institutional costs." Appendix 106. But this bald statement in the Governors' decision is not the only reference relating to the evidentiary basis for the Governors' determination. The Governors also state in their opinion: "For third class mail, we are generally ordering into effect the rates which the Postal Service proposed in April 1980." Appendix 105. That statement can fairly be said to have adopted by reference the Postal Service's position in its proposal in April 1980 with respect to third class mail. That position is part of an overall rate evaluation of great complexity and painstakingly advanced through memoranda and testimony of many individuals. Most notably, the testimony of Don S. Allen, on behalf of the United States Postal Service, contains detailed justifications for the third class rates that the Postal Service recommended at that time and that the Governors have adopted in lieu of the Commission recommendation. A brief review of the evidence and reasoning offered at that time establishes at least that the Governors have some basis in the record to support the recommended decision that they intend to implement on November 1, 1981. While a proper review of all the evidence might in fact demonstrate that the Governors' conclusion is not sufficiently supported to meet the statutory standard, the record certainly contains enough support to rebut plaintiff's present contention that it was a mere assertion or pronouncement, without any basis. Consequently, the challenge presented here is not materially different from that normally presented in postal rate cases.

■ Finally, with respect to irreparable injury or hardship, the plaintiff's claim must be judged in light of the statutory purposes and legislative assumptions applicable in this particular case. It is always true that rates adopted under section 3625 will create irreparable injury. Congress has determined not to permit the injunction of such rates, even if ultimately deemed to be illegal, and furthermore not to permit the recoupment of sums spent as a result of such illegal rates. Thus, in evaluating any claim of irreparable injury or substantial hardship in a postal rate proceeding the federal courts must keep in mind that Congress has ordered that a certain degree of hardship and injury must be borne by mail users, so long as the Governors have purported to adopt legal rates under section

3625. Plaintiff in this proceeding has demonstrated no extraordinary injury or hardship beyond the normal and expected injury and hardship in such cases. Therefore, while plaintiff may well have established a basis for speedy adjudication by a circuit court, it has created no special equitable basis for an injunction pending such action by either a circuit or a district court.

For the foregoing reasons, and for reasons explicit and implicit in the oral argument in this case, the motion for a preliminary injunction is denied, and the defendant's motion to dismiss the complaint is granted. Fed.R.Civ.Proc. 12(b)(1).

SO ORDERED.