**DIRECT MARKETING ASSOCIATION, INC., Plaintiff-Appellant,**

v.

**UNITED STATES POSTAL SERVICE, Defendant-Appellee.**

**No. 9, Docket 83–6054.**

United States Court of Appeals, Second Circuit.

Argued Sept. 12, 1983.

Decided Oct. 28, 1983.

Dana T. Ackerly, Washington, D.C. (David L. Harfst, Covington & Burling, Washington, D.C., Robert L. Sherman, New York City, of counsel), for plaintiff-appellant Direct Marketing Ass'n.

Frances G. Beck, Associate Gen. Counsel, United States Postal Service, Washington, D.C. (Louis A. Cox, Gen. Counsel, Eric P. Koetting, Scott L. Reiter, United States Postal Service, Washington, D.C., of counsel), for defendant-appellee United States Postal Service.

Before KAUFMAN, MESKILL and PIERCE, Circuit Judges.

## 56

MESKILL, Circuit Judge:

■ This is the latest in a series of cases generated by the fifth general ratemaking proceeding under the Postal Reorganization Act of 1970, 39 U.S.C. §§ 101 et seq. (1976) (Act). *See Time, Inc. v. United States Postal Service*, 685 F.2d 760 (2d Cir.1982), *after remand*, 710 F.2d 34 (2d Cir.1983); *Newsweek, Inc. v. United States Postal Service*, 663 F.2d 1186 (2d Cir.1981), *aff'd sub nom. National Association of Greeting Card Publishers v. United States Postal Service*, —— U.S. ——, 103 S.Ct. 2717, 77 L.Ed.2d 195 (1983); *Newsweek, Inc. v. United States Postal Service*, 652 F.2d 239 (2d Cir. 1981). Appellant Direct Marketing Association, Inc.[1] brought this action to challenge the validity of third class bulk mail rates implemented by the Board of Governors of the United States Postal Service (Postal Service) under 39 U.S.C. § 3641 (1976). The United States District Court for the Southern District of New York, Leval, *J.*, granted summary judgment in favor of the Postal Service. *Direct Mail/Marketing Association, Inc. v. United States Postal Service*, 555 F.Supp. 816 (S.D.N.Y.1983). After the appeal was taken, the challenged temporary rates expired when they were replaced by permanent rates promulgated pursuant to 39 U.S.C. §§ 3622(a)–3625 (1976). Because the temporary third class bulk mail rates are no longer in effect, the issue raised below is moot. Because it is unlikely that postal litigation history will repeat itself, the issue does not fall within the "capable of repetition, but evading review" exception to the mootness doctrine. *See Southern Pacific Terminal Co. v. I.C.C.*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911).

A brief review of previous postal rate cases will help to explain our decision. In April 1980 the Postal Service requested a "recommended decision" on postal rate changes from the Postal Rate Commission (PRC) under 39 U.S.C. § 3622(a);[2] it did not request a "recommended decision" on changes in the mail classification schedule.[3] The PRC's recommended decision of February 19, 1981 proposed third class bulk mail rates that were inconsistent with the then existing bulk mail rate classification schedule. The Postal Service disregarded the suggested third class bulk mail rates because it considered the classification changes to be unauthorized. Finding that the PRC had failed in effect to recommend third class bulk mail rates, it enacted temporary rates pursuant to 39 U.S.C. § 3641(a).[4] We upheld the Postal Service's enactment of the temporary third class bulk mail rates. *Newsweek, Inc. v. United States Postal Service*, 663 F.2d 1186 (2d Cir.1981), *aff'd on other grounds sub nom. National Association of Greeting Card Publishers v. United States Postal Service*, —— U.S. ——, 103 S.Ct. 2717, 77 L.Ed.2d 195 (1983).

1. Appellant participated in the proceeding below as Direct Mail/Marketing Association, Inc. The change in name to Direct Marketing Association, Inc. became effective February 1, 1983, before the appeal was filed.

2. 39 U.S.C. § 3622(a) (1976) states:
   (a) From time to time the Postal Service shall request the Postal Rate Commission to submit a recommended decision on changes in a rate or rates of postage or in a fee or fees for postal services if the Postal Service determines that such changes would be in the public interest and in accordance with the policies of this title. The Postal Service may submit such suggestions for rate adjustments as it deems suitable.

3. 39 U.S.C. § 3623(b) (1976) states in pertinent part:
   [T]he Postal Service may from time to time request that the Commission submit, or the Commission may submit to the Governors on its own initiative, a recommended decision on changes in the mail classification schedule.

4. 39 U.S.C. § 3641(a) (1976) provides:
   (a) In any case in which the Postal Rate Commission fails to transmit a recommended decision on a change in rates of postage or in fees for postal services to the Governors in accordance with section 3624(c) of this title, the Postal Service may establish temporary changes in rates of postage and in fees for postal services in accordance with the proposed changes under consideration by the Commission. Such temporary changes may take effect upon such date as the Postal Service may determine, except that such temporary changes may take effect only after 10 days' notice in the Federal Register.

While *Newsweek* was pending, the PRC submitted two more "recommended decisions" identical to the first (June 4 and September 17, 1981). The Postal Service rejected both "recommended decisions" and promulgated permanent rates by modifying the recommended rates for all classes of mail, including third class bulk mail, under 39 U.S.C. § 3625(d).[5]

In *Time, Inc. v. United States Postal Service*, 685 F.2d 760 (2d Cir.1982), we concluded that the Postal Service could not enact permanent rates for bulk mail under section 3625 because the PRC had never recommended bulk mail rates capable of being rejected or modified.[6] We reiterated that the Postal Service could enact temporary rates under section 3641 because the PRC had effectively failed to transmit a "recommended decision." We also noted that the permanent third class bulk mail rates adopted by the Postal Service "would clearly be permissible as temporary rates." *Id.* at 769. We did not consider whether the rates were properly enacted under section 3641 or whether they were supported by substantial evidence on the record. *Id.* at 768 n. 7.

On August 3, 1982, the Postal Service implemented temporary third class bulk mail rates identical to the permanent rates that it had proposed in September 1981.

Appellant brought suit on August 6, 1982 to enjoin the implementation of the rates. The district court granted appellee's motion for summary judgment on January 21, 1983. It found that (1) the Postal Service need not follow PRC costing methods in enacting section 3641 temporary rates; (2) the incorporation of all prior Postal Service statements in the resolution adopting the temporary rates provided sufficient justification for the rates' enactment; and (3) the Postal Service's actions were not arbitrary, capricious or an abuse of discretion. Appellant challenges these findings in this appeal.

On December 23, 1982, before summary judgment was granted in this case, the PRC recommended third class bulk mail rates that conformed to the existing classification schedule. The Postal Service returned these rates to the PRC for reconsideration under section 3625(c).[7] On April 18, 1983 the PRC again transmitted a "recommended decision" on third class bulk mail rates, which the Postal Service approved on May 2, 1983. The challenged temporary rates were void as of May 22, 1983, the date the newly approved permanent rates became effective.

Both parties correctly contend that the present case raises important issues as to the respective roles of the PRC and the

---

**5.** 39 U.S.C. § 3625(d) (1976) states:

(d) The Governors may reject the recommended decision of the Commission and the Postal Service may resubmit its request to the Commission for reconsideration. Upon resubmission, the request shall be reconsidered, and a further recommended decision of the Commission shall be acted upon under this section and subject to review in accordance with section 3268 of this title. However, with the unanimous written concurrence of all of the Governors then holding office, the Governors may modify any such further recommended decision of the Commission under this subsection if the Governors expressly find that (1) such modification is in accord with the record and the policies of this chapter, and (2) the rates recommended by the Commission are not adequate to provide sufficient total revenues so that total estimated income and appropriations will equal as nearly as practicable estimated total costs.

(footnote omitted).

**6.** We did hold that the Postal Service could enact section 3625(d) permanent rates for all other classes of mail. The case was remanded to the Postal Service to explain its new rates and to justify its rejection of the PRC's costing methods.

In *Time, Inc. v. United States Postal Service*, 710 F.2d 34 (2d Cir.1983), we determined that the Postal Service's permanent rates were supported by the record and were consistent with the policies underlying the Act.

**7.** 39 U.S.C. § 3625(c) (1976) states:

(c) The Governors may, under protest, allow a recommended decision of the Commission to take effect and (1) seek judicial review thereof under section 3628 of this title, or (2) return the recommended decision to the Commission for reconsideration and a further recommended decision, which shall be acted upon under this section and subject to review in accordance with section 3628 of this title.

Postal Service in the enactment of temporary rates under section 3641. This, however, is not the case in which to attempt such a clarification. We have no live controversy before us at this time. Article III, section 2, of the United States Constitution limits federal court jurisdiction to actual cases and controversies. *Nebraska Press Association v. Stuart,* 427 U.S. 539, 546, 96 S.Ct. 2791, 2796, 49 L.Ed.2d 683 (1976); *Sosna v. Iowa,* 419 U.S. 393, 402, 95 S.Ct. 553, 558, 42 L.Ed.2d 532 (1975). A case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt,* 455 U.S. 478, 481, 102 S.Ct. 1181, 1182–1183, 71 L.Ed.2d 353 (1982) (per curiam), *quoting Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 1950–1951, 23 L.Ed.2d 491 (1969). Therefore, the fact that the temporary rates are no longer in effect renders the issue of their validity moot.

■ Both parties argue, however, that the case falls within the "capable of repetition, but evading review" exception to the mootness doctrine. *See Southern Pacific Terminal Co. v. I.C.C.,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). For this exception to apply in a non-class action, two elements must be present: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Murphy v. Hunt,* 455 U.S. at 482, 102 S.Ct. at 1183, *quoting Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 348–349, 46 L.Ed.2d 350 (1975) (per curiam).

In deciding whether the present controversy is "capable of repetition, but evading review," we will consider only the present application of section 3641 as a response to the PRC's submission of inapplicable rates, and not the section's customary and intended application as a response to the PRC's failure to submit a timely "recommended decision." This restriction is necessary because the two applications present entirely different fact situations. When the PRC submits inapplicable rates, as it did in the present case, the Postal Service has received not only the PRC's "recommended decision," but also the mandatory accompanying statement that explains the PRC's costing methodology and policy considerations. 39 U.S.C. § 3624(d) (1976). However, when section 3641 is applied as Congress intended, namely, to allow the Postal Service to enact temporary rates when the PRC fails to submit a timely "recommended decision," H.R.Rep. No. 94–391, 94th Cong., 1st Sess. 9 (1975), the Postal Service will not have before it a "recommended decision," or the required accompanying statement. The availability of an accompanying statement that explains the PRC's costing methodology would control our analysis of the primary question raised by appellant, whether the Postal Service must rely on the PRC's costing methodology in enacting section 3641 temporary rates. Because the two section 3641 applications present such different fact situations and because the normal application of section 3641 is not presently in issue, our analysis of the question is limited to the unique fact situation in which the PRC submits inapplicable rates and the Postal Service has an accompanying statement before it. Therefore, our analysis of the applicability of the mootness exception must be limited to the use of section 3641 as a response to the PRC's submission of inapplicable rates.[8]

We believe that the unusual circumstances of this case, namely, the establishment of

---

8. We are reluctant to comment on the probability of the PRC's failing to submit a "recommended decision." We do not wish to speculate about whether the PRC will shirk its statutory duty to submit timely "recommended decisions."

Neither is it our place to assess the success of Congress in its attempt to limit the enactment of temporary rates under section 3641. Prior to 1976, section 3641 allowed the Postal Service to enact temporary rates if the PRC did not issue a "recommended decision" within 90 days of a Postal Service request. Congress amended the section to allow for a ten month waiting period because it gave

the Postal Service too much control over the rate process. Given the Postal Rate Commission's relative slowness in deciding rate cases, temporary rates established by the Postal Service have been in effect for longer periods of time since 1971 than permanent

temporary rates after the PRC issued a timely but inapplicable "recommended decision," is not likely to recur. Congress intended the PRC to be primarily responsible for ratemaking and the Postal Service to be primarily responsible for ensuring adequate postal revenues. *Time, Inc. v. United States Postal Service,* 710 F.2d 34, 36–37 (2d Cir.1983). We expect that the future operations of the Postal Service and the PRC will be consistent with these roles. In addition, we have held that the Postal Service may disregard improper PRC recommendations, specifically those inconsistent with existing classification schedules. We have stated further that the Postal Service is not limited to approving, rejecting, approving under protest, or modifying an improper "recommended decision" under section 3625, but rather may enact temporary rates under section 3641. *Newsweek, Inc. v. United States Postal Service,* 663 F.2d at 1206–07. Because it is clear that the PRC cannot use the limitations of section 3625 to force the Postal Service to accept improper rate or classification changes, *see id.* at 1206, we believe that the PRC will not propose future inapplicable rates or classifications.

We conclude that there is no live controversy here and the case is moot. Because the series of events giving rise to the present appeal are unlikely to recur, the matter does not fall within the "capable of repetition, but evading review" exception to the mootness doctrine. If the question of what factors the Postal Service must consider in enacting temporary rates arises again, it will likely follow a PRC failure to

submit a timely "recommended decision." The panel hearing that appeal will have an entirely different set of circumstances before it and will be in a better position than we are to answer the question. We should only decide issues that are presented by a live fact situation before the Court. We should not divine an answer to an important legal question on the basis of utter speculation.

The judgment of the district court is vacated and the case is remanded to the district court with instructions to dismiss the complaint as moot.[9]

---

rates which have resulted from Postal Rate Commission actions.

H.R.Rep. No. 94–391, 94th Cong., 1st Sess. 9 (1975). *See* Postal Reorganization Act Amendments of 1976. Pub.L. No. 94–421 § 5–6, 90 Stat. 1306–1307 (1976) (codified at 39 U.S.C. §§ 3624, 3641 (1976)). A ten month period, Congress decided, would help remove control over the rates from the Postal Service and supply an incentive for the PRC to complete its work in a timely fashion. *Id.* There is evidence that Congress hoped that resort to section 3641 would be unnecessary: "[I]t is at least possible that the temporary rate authority [will] not be utilized." S.Rep. No. 94–966, 94th Cong., 2d Sess. 12 (1976), U.S.Code Cong. & Admin.News 1976, 2400, 2411.

**9.** Our finding of mootness is further buttressed by the fact that a decision in the present case will affect the adoption of temporary rates in a "normal" application of section 3641. We believe that it is better to await a "normal" case in which section 3641 is used to implement temporary rates in the face of a PRC failure to submit a timely "recommended decision" to delineate the roles of the PRC and the Postal Service in the enactment of those rates. The present fact situation is so unusual that findings in this case may establish precedent that would be inapposite to temporary ratemaking in which the Postal Service has no evidence of the PRC's methodology or intent.