**ADVERTISERS DISTRIBUTION SERVICES, a Division of Consumer Information Enterprises, Inc. Advertisers Postal Service Corp., John Comee, d/b/a Morrison County Distribution Company, Plaintiffs,**

v.

**UNITED STATES POSTAL SERVICE, Defendant,**

Civ. A. No. 81–0681.

United States District Court, District of Columbia.

March 27, 1981.

James N. Horwood, David R. Straus, John Michael Adragna, Washington, D. C., William S. Seeley, Johnson & Eastlund, Minneapolis, Minn., for plaintiff.

Frances G. Beck, Asst. General Counsel, Susan M. Duchek, Washington, D. C., for U. S. Postal Service.

John M. Burzio, James H. Heller, Hydeman, Mason & Goodell, Washington, D. C., for Reuben H. Donnelley Corp.

David C. Todd, Patton, Boggs & Blow, Washington, D. C., for Mail Order Ass'n & Retail Federation.

Dana T. Ackerly, Covington & Burling, Washington, D. C., for Direct Mail Marketing Ass'n.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOHN LEWIS SMITH, Jr., Chief Judge.

Upon consideration of plaintiffs' motion for injunctive relief, defendants' and intervenors' opposition thereto, the entire record, and after hearing argument thereon, the Court enters the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. Plaintiff Advertisers Distribution Services ("ADS") is a Division of Consumer Information Enterprises, Inc., a Minnesota corporation with its principal place of business in Cambridge, Minnesota. Plaintiff Advertisers Postal Service, Inc. ("APS") is a Michigan corporation with its principal place of business in Gaylord, Michigan. Plaintiff John Comee is an individual proprietorship doing business as "Morrison County Distribution Company." Plaintiff ADS provides a delivery service for publications at various points in eastern Minnesota and western Wisconsin. Plaintiff APS provides a delivery service throughout Michigan, and plaintiff John Comee provides a delivery service in Morrison and adjacent counties in Minnesota. Plaintiffs' delivery services compete with the United States Postal Service and other carriers in the private delivery business.

2. Defendant United States Postal Service ("the Postal Service"), an independent establishment of the executive branch of the Government of the United States, has its principal office at 475 L'Enfant Plaza West, S.W., Washington, D.C. 20260, and provides essential postal services throughout the United States.

3. Intervenor Advo Systems, Inc. ("Advo"), 239 West Service Road, Hartford, Connecticut, 06101, a Delaware corporation, is the largest non-governmental mailer within the United States postal system. It is in the business of providing third-class bulk mailing services to large advertisers who seek to reach actual and potential customers through those mailings.

4. Intervenor Reuben H. Donnelley Corporation ("Donnelley"), 825 Third Avenue, New York, New York 10022, is a Delaware corporation engaged in the business of providing third-class bulk mailing services to large advertisers who seek to reach actual and potential customers through those mailings.

5. Intervenor Direct Mail/Marketing Association, Inc., 1730 K Street, N.W., Suite 905, Washington, D.C. 20006, is an association with approximately 2,300 member companies and is the largest organization representing firms involved in marketing by mail. The member companies of DMMA are substantial users, directly or indirectly, of third-class bulk regular rate mail.

6. Intervenor Mail Order Association of America ("MOAA") is a nonprofit corporation organized under the laws of the State of Illinois. It consists of six retail businesses which are extensive users of third-class mail.

7. The Postal Reorganization Act establishes procedures for changing postal rates and fees. Under the Act the Postal Rate Commission ("Commission") recommends changes in rates and fees as well as changes in mail classifications to the Governors of the Postal Service ("Governors"). 39 U.S.C. §§ 3622, 3623. The Governors then decide whether to approve, reject, modify, or allow under protest the rate and classification changes recommended by the Commission. 39 U.S.C. § 3625.

8. When the Commission fails to transmit to the Governors a recommended decision upon rate changes within ten months following a Postal Service request for rate changes, the Postal Service may implement temporary rates pursuant to 39 U.S.C. § 3641.

9. The Postal Service initiated the fifth general rate proceeding on April 21, 1980 by filing a request for a recommended decision with the Commission, which docketed the case as Docket No. R80–1. Some 55 entities, ranging from large trade associations to persons appearing *pro se*, participated in Docket No. R80–1.

10. Plaintiffs did not attempt to intervene or take part in Docket No. R80–1 until the same day on which they filed their motion for a temporary restraining order, when they filed a petition for late intervention with the Commission.

11. Proposals for changes in the rates for third-class mail were made in Docket No. R80–1 by several parties. The proposals included rate reductions of varying degrees.

12. The Commission transmitted a recommended decision in Docket No. R80–1 to the Governors on February 19, 1981. The Commission recommended classification changes for bulk third-class mail, reclassifying third-class mail bulk mail into "lightweight" and "heavyweight" categories, inter alia.

13. The Commission recommended one set of rates for third-class bulk mail which assumed the changes in classification which it was recommending. The Commission did not recommend rates for third-class bulk mail which assumed the continuance of the existing classification without the changes which it was recommending.

14. The Commission's third-class bulk classification change was similar to a change which had been advocated by the Commission in an earlier proceeding, Commission Docket No. MC78–2. The Governors had rejected the concept at that time. In spite of that earlier rejection, the Commission did not recommend rates for the existing third-class bulk mail classifications.

15. The Governors issued their Decision on the Commission's Recommended Decision on March 10, 1981. They exercised their authority under § 3625 and rejected the Commission's recommended changes in the classification of third-class bulk mail. The Governors made a finding that no rates had been recommended which could be implemented under the existing classification schedule. Therefore, they found that the Commission had not issued a recommended decision on rates for third-class bulk mail within the statutory period. 39 U.S.C. § 3624(c)(1).

16. The Postal Service exercised its authority to impose temporary rates for third-class bulk mail. 39 U.S.C. § 3641.

17. The Board of Governors set an effective date of March 22, 1981 at 12:01 a. m. for implementing the new rates, including the temporary third-class bulk rates.

18. On March 20, 1981, the plaintiffs filed an action seeking a temporary restraining order against the implementation of the temporary rates. On that day Judge June Green of the District Court for the District of Columbia denied plaintiffs' motion for a temporary restraining order. The temporary third-class bulk rates went into effect at 12:01 a. m. on March 22, 1981.

19. Hearings on plaintiffs' request for a preliminary injunction were held before this Court on March 26, 1981. Plaintiffs, defendant, and intervenors presented both written pleadings and oral argument.

20. Review of Decisions of the Governors is reserved for the courts of appeals. 39 U.S.C. § 3628.

21. At present, petitions for review of the Governor's Decision have been filed in two courts of appeals, those for the second circuit and for the District of Columbia.

22. Plaintiffs base their claim of irreparable harm upon a comparison of their own rates with the Postal Service's temporary rates for bulk third-class mail presorted to carrier routes. Plaintiffs' rate comparisons, however, do not consider the costs of preparing bulk third-class carrier route presorted mail. These preparations include sorting to carrier route, sacking and bundling the mail, as well as addressing the mail and maintaining accurate address lists.

23. On balance, the record demonstrates that carrier route third-class bulk mail is price elastic. Affidavit of Edward J. McCaffrey, Assistant Postmaster General, United States Postal Service, pp. 3–4. Therefore, the lowering of the rates which plaintiffs complain of will not cause Postal Service revenues to decrease.

24. To make a change in rates for third-class bulk mail now would generate great confusion as the Postal Service attempted

to promptly notify its thousands of facilities and customers. If a preliminary injunction were to issue now and the rates now in place were later held to be lawful and were reinstated, further confusion would be created. In addition, it is doubtful whether the excessive rates paid in the interim could be recovered by the mailers. 39 U.S.C. § 3681.

25. Intervenors Advo, Donnelley, and the members of MOAA would be required to pay higher bulk third-class mail rates for carrier route presorted mail if an injunction were to issue now. As a result, customers would cancel their mailing orders, reducing revenues for these intervenors and for the Postal Service. Affidavit of Vincent Giuliano.

26. Sudden repeated changes in rates for third-class bulk mail would shake the confidence of mailers in the Postal Service and would undermine their willingness to use it.

## CONCLUSION OF LAW

1. Plaintiffs have failed to meet the requirements for granting injunctive relief under *Virginia Petroleum Jobbers Association v. Federal Power Commission*, 104 U.S. App.D.C. 106, 259 F.2d 921 (1958), and *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 182 U.S. App.D.C. 220, 559 F.2d 841 (1977).

2. Plaintiffs have made no showing of likelihood of success on the merits:

(a) Section 3628 of title 39, United States Code, creates exclusive jurisdiction in any United States Court of Appeals to review decisions of the Governors of the United States Postal Service acting on recommended decisions of the Postal Rate Commission pursuant to the provisions of Chapter 36, title 39, United States Code. Plaintiffs' second and fifth claims for relief are grounded in allegations that the Governors' decision of March 10, 1981, was unlawful. Pursuant to section 3628, this court lacks jurisdiction with regard to these aspects of plaintiffs' action. Other grounds of plaintiffs' complaint appear to be intertwined with issues involving allegations of illegality of the Governors' decision, creating uncertainty whether this court has jurisdiction over the matter. *See Reader's Digest Association, Inc. v. United States Postal Service*, 501 F.Supp. 126 (D.D.C.1980), *appeal docketed*, No. 80–2300 (D.C.Cir., filed Oct. 22, 1980).

(b) Section 3641(a) of title 39, United States Code, empowers the Postal Service to implement rates of postage on a temporary basis in any case in which the Postal Rate Commission fails to transmit to the Governors, within ten months of a request by the Postal Service pursuant to 39 U.S.C. § 3622, a recommended decision on a change in rates of postage. Section 202(a) of title 39 provides that the Board of Governors directs the exercise of the power of the Postal Service. Since the Recommended Decision of the Postal Rate Commission in Docket No. R80–1 did not include a recommendation of rates for bulk third-class mail under its existing classification, the Board of Governors acted within its authority on March 10, 1981, in deciding to implement temporary rates for bulk third-class mail on March 22, 1981. The Board of Governors' action complied with the notice provision set forth in 39 U.S.C. § 3641(a).

(c) Plaintiffs have failed to demonstrate that the temporary rates implemented by the Board of Governors are not in accordance with the specific provisions of section 3641 or with the policies of title 39, United States Code.

3. Plaintiffs have made no showing of irreparable injury.

(a) Plaintiffs' allegations of harm do not take into account the costs of mailer preparation that would have to be incurred by advertisers who might choose to use the Postal Service rather than plaintiffs' delivery services. In light of this omission, there can be little confidence in plaintiffs' speculation that business will be diverted from them to the Postal Service as a result of lower postage rates alone.

(b) Plaintiffs' allegations of harm focus on only a limited segment of the temporary bulk third-class mail rates. Other segments

of those rates are higher than plaintiffs' rates.

(c) Plaintiffs' allegations of harm are based on the assumption that any gain in business to the Postal Service as a result of the temporary rates will be a loss of business to plaintiffs. In light of alternative types of advertising media, that assumption has not been proven.

(d) Plaintiffs have not demonstrated that any loss of business they might experience as a result of the Postal Service's temporary rates would be irreparable.

4. The balance of equities favors the defendants and intervenors in this proceeding. The possible benefit to plaintiffs from the relief requested is substantially outweighed by the burden that would be imposed on the defendants and the intervenors. In particular, restraining application of the temporary rates would result in substantial loss of business and substantial increases in postage costs to third-class mailer intervenors. Section 3681, title 39, United States Code, prevents mailers from being reimbursed for amounts paid under any permanent rate subsequently found to be unlawful in a review pursuant to 39 U.S.C. § 3628. The Postal Service would also be caused substantial harm in the form of administrative expense, operational disruption, and lost revenues if the requested relief were to be granted. Much of this harm would be irreparable. Finally, in light of plaintiffs' failure to participate in proceedings before the Postal Rate Commission in Docket No. R80–1 and the timing of the filing of this action, the balance of equities favors defendants and intervenors.

5. With reference to the public interest, the public has a definite interest in orderly, consistent postal rates. Changing the status quo now would result in chaos and confusion. The public also has an interest in the integrity of the Congressionally-designed mechanism for making postal rate and classification changes, as embodied in Chapter 36 of title 39, United States Code.

An order consistent with the foregoing has been entered this day.