**TIME, INC., et al., Petitioners,**

**v.**

**UNITED STATES POSTAL SERVICE, Respondent.**

**Dockets 81–4183, 81–4185.**

United States Court of Appeals, Second Circuit.

Argued Dec. 1, 1981.

Decided Dec. 23, 1981.

Frances G. Beck, Associate Gen. Counsel, U. S. Postal Service, Washington, D.C. (Daniel J. Foucheaux, Jr., Asst. Gen. Counsel, and Leslie Corston, U. S. Postal Service, Washington, D.C., of counsel), for U. S. Postal Service.

Richard J. Webber, Washington, D.C. (Matthew S. Perlman, Arent, Fox, Kinter, Plotkin & Kahn, Washington, D.C., of counsel), for National Ass'n of Greeting Card Publishers.

Before FRIENDLY, OAKES and PIERCE, Circuit Judges.

FRIENDLY, Circuit Judge:

In these two dockets, Time, Inc. and Newsweek, Inc. petitioned this court on September 30, 1981, to review an order of

the Board of Governors of the United States Postal Service (the Board) adopted on the previous day. Later on the day of September 30, National Association of Greeting Card Publishers (NAGCP or the movant) and Mail Order Association of America petitioned for review of the same order in the Court of Appeals for the District of Columbia Circuit. That court consolidated those and other petitions and transferred them to this circuit pursuant to 28 U.S.C. § 2112. We consolidated the Time and Newsweek petitions of our own motion and the Postal Service has moved for consolidation of the others with them. On December 1, 1981, we denied a motion of NAGCP to transfer all the petitions to the Court of Appeals for the District of Columbia Circuit.

This opinion is addressed to another motion of NAGCP, heard on the same day, in which it asks us to exercise our power under 5 U.S.C. § 552b(h)(2)[1] to inquire into an alleged violation by the Board of the requirement of 5 U.S.C. § 552b(b) that "Except as provided in subsection (c), every portion of every meeting of an agency shall be open to public observation" or, in the

alternative, to suspend proceedings on these petitions for review until decision by the District Court for the District of Columbia of an action for injunctive relief filed by NAGCP in that court on October 5, 1981. The facts giving rise to NAGCP's claim are as follows:

As recounted in a recent opinion of this court, *Newsweek, Inc. v. United States Postal Service*, 663 F.2d 1186, 1191–1192 (1981), the proceedings culminating in the order here under review began with a request by the Postal Service dated April 21, 1980, to the Postal Rate Commission (PRC)[2] for a recommended decision on changes in postal rates. As there stated, this request initiated R80–1, a general ratemaking proceeding, wherein, after extensive hearings, the PRC, on February 19, 1981, forwarded to the Board a recommended decision which slashed $1 billion from the Postal Service's proposed general revenue requirements and made many changes in cost distribution and rates as compared with those proposed by the Postal Service. The Board, on March 10, 1981, pursuant to 39 U.S.C. § 3625(c)(2), returned

---

1. 5 U.S.C. § 552b(h) reads as follows:

(1) The district courts of the United States shall have jurisdiction to enforce the requirements of subsections (b) through (f) of this section by declaratory judgment, injunctive relief, or other relief as may be appropriate. Such actions may be brought by any person against an agency prior to, or within sixty days after, the meeting out of which the violation of this section arises, except that if public announcement of such meeting is not initially provided by the agency in accordance with the requirements of this section, such action may be instituted pursuant to this section at any time prior to sixty days after any public announcement of such meeting. Such actions may be brought in the district court of the United States for the district in which the agency meeting is held or in which the agency in question has its headquarters, or in the District Court for the District of Columbia. In such actions a defendant shall serve his answer within thirty days after the service of the complaint. The burden is on the defendant to sustain his action. In deciding such cases the court may examine in camera any portion of the transcript, electronic recording, or minutes of a meeting closed to the public, and may take such additional evidence as it deems neces-

sary. The court, having due regard for orderly administration and the public interest, as well as the interests of the parties, may grant such equitable relief as it deems appropriate, including granting an injunction against future violations of this section or ordering the agency to make available to the public such portion of the transcript, recording, or minutes of a meeting as is not authorized to be withheld under subsection (c) of this section.

(2) Any Federal court otherwise authorized by law to review agency action may, at the application of any person properly participating in the proceeding pursuant to other applicable law, inquire into violations by the agency of the requirements of this section and afford such relief as it deems appropriate. Nothing in this section authorizes any Federal court having jurisdiction solely on the basis of paragraph (1) to set aside, enjoin, or invalidate any agency action (other than an action to close a meeting or to withhold information under this section) taken or discussed at any agency meeting out of which the violation of this section arose.

2. The relation between the Board and the PRC is thoroughly discussed in Judge Meskill's opinion, at 1190–1191 *et passim*.

the recommendation to the PRC for reconsideration but allowed the bulk of the decision to take effect under protest. While proceedings for the review of that order were pending, the PRC upon reconsideration submitted to the Board, on June 4, 1981, a second recommended decision which, with one minor exception, recommended the same rates and fees that were contained in its first. On this occasion the Board, on June 29, 1981, reiterating the views stated in its March 10 opinion, rejected the PRC's Recommended Decision upon Reconsideration and requested a second reconsideration and a further recommended decision.

Anticipating the receipt of such a recommended decision, the Board, on September 16, 1981, announced in the Federal Register its intention to meet on September 22, 1981, 46 F.R. 46,040–46,056, to consider, *inter alia,* the PRC's recommended decision and also announced that it might decide to close that portion of the meeting.[3] The PRC submitted its recommended decision upon further reconsideration, which again reaffirmed the views expressed in its initial recommended decision of February 19, 1981. At its September 22 meeting, the Board voted to consider the PRC's recommended decision as its first agenda item and also that the portion of the meeting dealing with the PRC's recommendation be closed. As stated in a notice published on September 25, 1981, 46 F.R. 47,350,

> the Governors determined, in accordance with 5 U.S.C. 552b(d)(1) and (e)(2), that the portion of the meeting to be closed was exempt from the open meeting requirement of the Government in the Sunshine Act pursuant to 5 U.S.C. 552b(c)(10) in that it was likely to specifically concern agency participation in a civil action or proceeding.[4]

The Board, not having concluded its deliberations on September 22, 1981, also published on September 25 a notice, which we reproduce in the margin,[5] of a closed special

---

**3.** This altered the place of a meeting previously announced and included a statement that

> The Board will consider as the first item of its agenda at this meeting the Opinion and Recommended Decision Upon Further Reconsideration of the Postal Rate Commission encaptioned Postal Rate and Fee Changes, 1980 (Commission Docket R80–1), if such Opinion and Recommended Decision has been issued at that time. The Board anticipates that it will consider after approximately 2:00 p. m. on September 22 such of the agenda items previously announced as time permits, except that the report of the Regional Postmaster General, Western region, will not be presented.
>
> It is noted that the Government in the Sunshine Act (5 U.S.C. § 552b) provides that an agency may close a portion of a meeting to the public, following public announcement of the time, place, and subject matter of the meeting, under certain circumstances. It is possible that the Board may determine on September 22 that the nature of its discussion requires closure of a portion of this meeting, having in mind that the instant rate proceeding is in litigation.

**4.** The statement further said:

> The Governors determined at the September 22 meeting that the timely discharge of their responsibilities required that this portion of the meeting in question should be closed, notwithstanding the fact that the published agenda for the meeting had not stated that any portion would be closed.

> The Governors determined that the public interest did not require that this portion of the meeting be open to the public, since a failure to discuss litigation strategies without the inhibitions to candor that might result from holding such a discussion in public (quite possibly with opposing counsel in attendance) would be inconsistent with the public's interest in having the Governors arrive at their Decision only after a candid evaluation of how the various alternative[s] open to them might best be analyzed in the light of pending litigation.
>
> In accordance with 5 U.S.C. 552b(c)(10), the Acting General Counsel of the United States Postal Service certified that in his opinion the portion of the meeting to be closed might properly be closed to public observation.

**5.** On September 22, 1981, the Governors of the United States Postal Service voted to close to public observation the special meeting to be held Tuesday, September 29, 1981. The meeting to be closed, which is a continuation of the September 22 meeting, will involve a discussion of those aspects of the Opinion and Recommended Decision Upon Further Reconsideration of the Postal Rate Commission in the proceeding encaptioned Postal Rate and Fee Changes (1980) (Commission Docket No. R80–1) dated September 17, 1981, which would be likely specifically to concern the Postal Service's participation in civil litigation.

> The Governors determined, pursuant to 5 U.S.C. 552b(c)(10) that the portion of the meet-

meeting to be held on September 29 to consider the PRC's recommended decision. At the September 29 meeting, the Board, by unanimous vote, invoking its authority under 39 U.S.C. § 3625(d), changed many of the recommendations made by the PRC, including a change of the rate for the first ounce of first-class letter mail to 20 cents as the Postal Service had initially proposed.

By letter dated September 30, 1981, to the General Counsel of the Postal Service, counsel for NAGCP requested "a complete copy of the transcript or tapes of the Board of Governors' closed meetings of September 22, 1981 and September 29, 1981",[6] see 5 U.S.C. § 552b(f)(2). The Assistant General Counsel declined, stating:

> The Board, however, has determined, pursuant to subsection (f)(2) of the Act, that the discussions in the meetings contained information that might properly be withheld from the public under the provisions of the Act and that the transcript of the discussion should not be made publicly available. As a result we are not at liberty to furnish the materials you have requested.
>
> As you may be aware, the meetings were closed to public observation in reliance on subsection (c)(10) of the Act. Given the prospect of litigation which was present at the time of the meetings and the need for the candid discussion of the Postal Service's participation in the litigation, we think that the decisions to close the meetings and not to make transcripts of the meetings available were both proper and appropriate in the public interest.

In consequence, as stated above, NAGCP brought an action under § 552b(h)(1) in the District Court for the District of Columbia and later made this motion to us under § 552b(h)(2).

Section 552b(c) of 5 U.S.C. qualifies the "open meeting" provision of § 552b(b) by providing that

> Except in a case where the agency finds that the public interest requires otherwise, the second sentence of subsection (b) shall not apply to any portion of an agency meeting, and the requirements of subsections (d) and (e) shall not apply to any information pertaining to such meeting otherwise required by this section to be disclosed to the public, where the agency properly determines that such portion or portions of its meeting or the disclosure of such information is likely to—

do any one of ten matters. The exclusion here relevant is (10), which reads as follows:

> specifically concern the agency's issuance of a subpena, or the agency's participation in a civil action or proceeding, an action in a foreign court or international tribunal, or an arbitration, or the initiation, conduct, or disposition by the agency of a particular case of formal agency adjudication pursuant to the procedures in section 554 of this title or otherwise involving a determination on the record after opportunity for a hearing.

The Board argues that the first agenda item of the September 22 meeting and the whole of the September 29 meeting specifically concerned "the agency's participation in a civil action or proceeding". It points out that 39 U.S.C. § 3625 afforded it a

---

ing to be closed was exempt from the open meeting requirement of the Government in the Sunshine Act in that it was likely specifically to concern agency participation in a civil action or proceeding.

\* \* \* \* \* \*

The Governors determined that the public interest did not require that this meeting be open to the public, since a failure to discuss litigation strategies without the inhibitions to candor that might result from holding such a discussion in public (quite possibly with opposing counsel in attendance) would be inconsist-

ent with the public's interest in having the Governors arrive at their Decision only after a candid analysis of how the various alternatives open to them might best be analyzed in light of pending litigation.

**6.** The letter added that:

> If any portions are deleted from the transcripts or tapes provided me, please include a full statement of reasons and a citation of statutory authority justifying each withholding, and an explanation of the content or scope of the deleted items.

choice among many different strategies—approving the PRC's recommended decision; allowing the decision to take effect under protest and either itself seeking judicial review or returning the recommendation to the PRC for a still further recommended decision; rejecting the recommended decision; or, what it did here, modifying the recommended decision by a unanimous written concurrence of all Governors then in office upon making specified findings.[7] Some of these courses would involve additional proceedings before the PRC; one of them would have the consequence, unusual with administrative agencies, of entitling the Board to appeal from its own order; and almost any was highly likely, in view of the history of this docket, to provoke appeals by others,[8] as these very proceedings prove. The movant answers that to read the litigation provision of § 552b(c)(10) so broadly as to include substantive discussion, rather than "legal strategy", see S.Rep. No. 354, 94th Cong., 1st Sess. 26 (1975), with respect to the action under contemplation, would make the exception swallow the rule; that at least some of the issues stated by the General Counsel to have been discussed at the closed meetings bore on future litigation solely in the way that decision on the merits in any decision before an agency would do; and that only the in camera examination authorized by § 552b(h)(1) can separate the protected wheat from the disclosable chaff. The Board responds by arguing that 5 U.S.C. § 552b(f)(2) makes each agenda item the relevant unit so that if the item contains some material exempt under clause (c)(10), the entire meeting on that item gains exemption despite the "portion or portions" language,[9] claiming support from an excerpt from S.Rep. No. 354, supra, at 31, stating

> [a]gencies need not edit a transcript or electronic recording of the ... discussion of a particular matter word by word so as to make abbreviated portions of the record of the meeting available to the public. Where sensitive matters are an integral part of the record of the discussion of a matter, no part of the record need be made public.

see also p. 20, and from the opinion in *A.G. Becker Inc. v. Board of Governors of the Federal Reserve System*, 502 F.Supp. 378, 386–88 (D.D.C.1980). In what is stated to be the only previous decision with respect to application of the litigation exception to the Postal Service, *Graphnet, Inc. v. United States Postal Service*, No. 80–0246, D.D.C., decided February 4, 1980, Judge Richey ruled in favor of the Board; however, that decision might be distinguishable because there the recommended decision of the PRC relied in part on an opinion of the FCC, *Graphnet, Inc.*, 73 F.C.C.2d 283 (1979), which the Postal Service was already challenging on appeal.

■ Although such exceedingly difficult questions will inevitably arise in the case of other agencies, we find it unnecessary to resolve them here, since we think the closed meeting fell within the language of § 552b(c)(10) exempting

> the initiation, conduct, or disposition by the agency of a particular case of formal

---

**7.** These are that:
(1) such modification is in accord with the record and the policies of this chapter, and (2) the rates recommended by the Commission are not adequate to provide sufficient total revenues so that total estimated income and appropriations will equal as nearly as practicable estimated total costs.

**8.** The Board cites, in addition to the appeals to this court decided in *Newsweek, supra*, involving its decision of March 10, 1981, an appeal, *Advertisers Distribution Service v. United States Postal Service.* 526 F.Supp. 699 (D.C. Cir.), filed July 24, 1981, with respect to its decision of June 29, 1981. See also the appeals of earlier actions cited by Judge Meskill in his *Newsweek* opinion, at 1193–96.

**9.** The Board argues that this differentiates the Sunshine Act from the more onerous editing requirement of the Freedom of Information Act that agencies furnish upon request "[a]ny reasonably segregable portion of a record ... after deletion of the portions which are exempt under this subsection", 5 U.S.C. § 552(b).

agency adjudication pursuant to the procedures in section 554 of this title or otherwise involving a determination on the record after opportunity for a hearing.

Section 3624(a) of Title 39 provides

that the Commission shall not recommend a decision until the opportunity for a hearing on the record under sections 556 and 557 of title 5 has been accorded to the Postal Service, users of the mails, and an officer of the Commission who shall be required to represent the interests of the general public.

Sections 556 and 557 require considerably more rigorous procedures than those generally applicable to rulemaking under § 553.

■ Although the last clause of § 552b(c)(10) could be literally read as limited to "adjudication", we think Congress also intended to cover rulemaking "involving a determination on the record after opportunity for a hearing"—in other words, to include all cases for which the procedures of §§ 556 and 557 were required. Any other reading would render the "or otherwise" clause largely surplusage since, save as indicated in footnote 10, *infra*, § 554 covers "every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing". Indeed the House Report expressly states that exception (c)(10) applies both to "formal agency adjudication or determinations on the record after opportunity for a hearing (formal rule making)", H.R. Rep. (Judiciary Committee) No. 880 (Part II) 9, *reprinted in* [1976] U.S. Code Cong. & Admin. News, 94th Cong., 2d Sess. 2212, 2219

(1976).[10] The evident sense of Congress was that when a statute required an agency to act as would a court, its deliberations should be protected from disclosure as a court's would be.

When the court inquired at argument as to the applicability of the last clause of exception (10), the movant responded that, while this might protect the PRC, it did not cover the Board. Again this is too literal a reading. While the PRC "conduct[s]" the major portion of a postal rate proceeding, the Board initiates and disposes of it, 39 U.S.C. §§ 3623(b), 3625. The function of the PRC is similar to that of an administrative law judge making a recommended decision under 5 U.S.C. § 557(b), except for the limitations in disposition imposed on the Board by 39 U.S.C. § 3625. Although § 3624's requirement of a hearing on the record applies in terms only to the PRC's conduct of the proceedings, there is no reason to suppose that Congress intended the protection of exception (c)(10) to apply only to meetings of the PRC which cannot result in action having legal effect but not to meetings of the Board which do.

It remains to consider whether upholding the exception under the final clause of subsection (c)(10) rather than under the "participation in a civil action or proceeding" clause would violate the rule of *SEC v. Chenery Corp. (Chenery I)*, 318 U.S. 80, 87, 95, 63 S.Ct. 454, 459, 462, 87 L.Ed. 626 (1943), "that an administrative order cannot be upheld unless the ground upon which the agency acted in exercising its powers were those upon which its action can be sustained." As later explained in *Burlington*

**10.** This reading of the "or otherwise" clause is strengthened by examination of its development. Earlier versions of the Sunshine Act, H.R. 10,000, introduced in 1973, and H.R. 5075, introduced in 1975, see Government in the Sunshine Act—S. 5 (Public Law 94–409), Source Book: Legislative History, Texts, and Other Documents, 94th Cong., 2d Sess. 388, 399 (1976), had referred to "a case of adjudication governed by the provisions of the first paragraph of section 554(a) of title 5, United States Code, or of subsection (1), (2), (4), (5), or (6) thereof." However, the changes of language whereby reference to these exceptions was eliminated and language of 5 U.S.C. § 553(c) with respect to formal rulemaking was substituted, along with the explanation in the House Report quoted in the text, suggests that Congress intended to include formal rulemaking, with such concomitants as that decision shall be made solely on the record, 5 U.S.C. § 556(d), and prohibition of outside contact, § 557(d), and that limitation by virtue of the term "adjudication", appropriately used in the earlier bills, would be inconsistent with the phrase "or otherwise".

*Truck Lines, Inc. v. United States*, 371 U.S. 156, 168–69, 83 S.Ct. 239, 245–246, 9 L.Ed.2d 207 (1962), the rationale of the *Chenery* rule is that a reviewing court cannot be sure that the agency would have acted for any reason other than that on which it relied; as stated in *Chenery II*, 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947), the purpose of the rule is to avoid "propel[ling] the court into the domain which Congress has set aside exclusively for the administrative agency." See also *Chenery I*, 318 U.S. at 88, 63 S.Ct. at 459. The Court has later spoken of "the limited office" of the *Chenery* decision, *Penn Central Merger and N & W Inclusion Cases*, 389 U.S. 486, 518–19 n.10, 88 S.Ct. 602, 618 n.10, 19 L.Ed.2d 723 (1968).

To preclude reliance on the second clause of exemption (10) would press the *Chenery* doctrine too far since the only determination required under that clause is that withholding the transcript is not contrary to the public interest, § 552b(c), and the Board has already decided this in claiming an exemption under the first clause of (10). No one reading the Board's statement of its reasons for closing the meeting could doubt for a moment that it would have followed the same course if it had known that the last clause of (c)(10) afforded a surer ground than the litigation exception. As Justice Fortas said in *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766–67 n.6, 89 S.Ct. 1426, 1430, n.6, 22 L.Ed.2d 709 (1969), "*Chenery* does not require that we convert judicial review of agency action into a ping-pong game." Here the Board's desire to keep its deliberations on the PRC's recommendation closed to the public for any lawful reason is beyond possible question. It would have welcomed knowledge of a further ground for doing so.

In view of our conclusion that the Board's action in closing part of the September 22

and all of the September 29 meeting was proper under the final clause of § 552b(c)(10), we, of course, decline the invitation to avail ourselves of the discretionary power of inquiry conferred on us by 5 U.S.C. § 552b(h)(2). Indeed, we would do this even if we entertained more doubt with respect to the applicability of the (c)(10) exception than we do. Our judgment on these petitions for review will hinge on the sufficiency of the record to support the findings of the Board under 39 U.S.C. § 3625(d), not upon how the Governors reached the conclusions that they did. *United States v. Morgan (Morgan IV)*, 313 U.S. 409, 421–22, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941). We likewise deny NAGCP's alternative motion to suspend these review proceedings pending a possibly contrary decision with respect to the exemption by the District Court for the District of Columbia. Whatever that court may decide,[11] and a decision either way could well be appealed, it cannot "set aside, enjoin, or invalidate" the action taken by the Board, § 552b(h)(2). Furthermore, suspension of these proceedings, with the attendant delay, would disregard Congress' direction to make petitions like these "a preferred cause" and to "expedite judgment in every way", 39 U.S.C. § 3628.

The motion and the alternative motion are denied.

---

11. We intimate nothing with respect to the effect of our decision by way of collateral estoppel.