DIRECT MAIL/MARKETING ASSOCIA-
TION, INC., Plaintiffs,

v.

UNITED STATES POSTAL
SERVICE, Defendant.

No. 82 Civ. 5208 (PNL).

United States District Court,
S.D. New York.

Jan. 21, 1983.

Dana T. Ackerly, Covington & Burling, Washington, D.C., for plaintiffs.

Frances G. Beck, Associate Gen. Counsel, David R. Straus, Washington, D.C., for intervenors, Advertisers Distribution Service.

## OPINION AND ORDER

LEVAL, District Judge.

This is an action by Direct Mail/Marketing Association (DMMA), an organization representing bulk mail customers of the United States Postal Service, challenging the implementation under 39 U.S.C. § 3641

of temporary rates for third class bulk mail. Advertisers Distribution Services and Advertisers Postal Service Corp., representing competitors of the Postal Service in the handling of bulk mail, have intervened as defendants in support of the temporary rates promulgated. Both sides move for summary judgment.

### FACTS ·

### A. Background

Defendant, the United States Postal Service, is an independent establishment of the executive branch of the United States Government. 39 U.S.C. § 201. Among the postal services it provides is the distribution of third class bulk rate regular (BRR) mail, which consists primarily of advertising circulars, catalogues and the like. BRR mail receives lower priority service than first class mail and must be presorted by the mailer. More finely presorted mail benefits from lower rates.

Plaintiff DMMA, with some 2600 members, is the largest organization of firms engaged in marketing by mail. Its members are substantial users of BRR mail. Intervenors represent firms which compete with the Postal Service in the handling and delivery of bulk mailings.

This action is a round in the protracted battle over the fifth general ratemaking proceedings under the Postal Reorganization Act, 39 U.S.C. §§ 101 *et seq.* (the Act). Under the Act, the Postal Service is managed by its Board of Governors (the Board), which consists of nine Governors, the Postmaster General and the Deputy Postmaster General. 39 U.S.C. § 201.[1] Key ratemaking decisions, however, are entrusted to the Governors, whose decisions are then implemented by the Board of Governors. § 3625.

Responsibility for postal ratemaking under the Act is divided between the Postal Service and the Postal Rate Commission

---

1. The Governors are appointed by the President with the advice and consent of the Senate; the Postmaster General and the Deputy Postmaster General are appointed by the Governors.

(the PRC).[2] *See Newsweek, Inc. v. United States Postal Service,* 663 F.2d 1186, 1190–91 (2d Cir.1981), *cert. granted,* 456 U.S. 925, 102 S.Ct. 1969, 72 L.Ed.2d 439 (1982). The procedure for establishing permanent rates begins with a detailed and specific "request" from the Postal Service to the PRC under 39 U.S.C. § 3622(a) and 39 C.F.R. § 3001.54. The PRC then conducts hearings and responds with a "recommended decision." §§ 3622(b) & 3624. The Governors may then "approve, allow under protest, reject, or modify" the PRC's recommended decision. 39 U.S.C. § 3625(a). If they choose any course other than approval, the Act provides procedures they must follow to establish valid permanent rates. The Governors' decisions under § 3625 are reviewable directly by the courts of appeals under § 3628.

The Act also establishes procedures for changes in the mail classification schedule. 39 U.S.C. § 3623.

The issue here does not relate to permanent BRR rates under § 3625, but to temporary BRR rates. When the PRC fails to transmit a recommended decision on a request from the Postal Service, § 3641 gives the Board of Governors power to establish temporary rates. This power is limited in several ways. Temporary rates must be "in accordance with the proposed changes under consideration by the [PRC]" (subsection (a)), and they must not exceed the permanent rates requested by the Postal Service (subsection (c)). Most importantly, as to this case, subsection (b) provides:

> Any temporary rate or fee established by the Postal Service under subsection (a) of this section shall be in accordance with the policies of this title and shall not exceed such amount as may be necessary for sufficient revenues to assure that the total estimated income, including appropriations, of the Postal Service shall, to the extent practicable, be equal to the total estimated costs of the Postal Service.

The temporary rates must expire within 150 days after the PRC transmits its recommended decision (subsection (d)).

**B. The genesis of the BRR rates**

The fifth general ratemaking proceeding began in April, 1980, when the Postal Service asked the PRC for a recommended rate change covering virtually all classes of mail, including BRR. *Request of the United States Postal Service,* Postal Rate Commission Docket R80–1 (the "*Request*"). This *Request* proposed new BRR rates (the "requested BRR rates") which were substantially higher than those then in force (the "1980 BRR rates"). The Service included among the voluminous documents supporting its *Request (see Newsweek, supra,* 663 F.2d at 1191 & n. 3) witness testimony and documents directed specifically at the BRR rates. *See, e.g., Request,* testimony of Don S. Allen, at 16–19, 93–116; *id.,* testimony of George S. Tolley, at 39–49. The *Request* also asked for new classifications for some types of mail, but not for BRR.

The PRC then conducted a proceeding in which more than 50 parties, including DMMA, intervened and more than 90 witnesses testified. On February 19, 1981 it transmitted its *Opinion and Recommended Decision* in Docket No. R80–1 ("First RD"). The First RD included BRR rates that were predicated on a change in the existing classification. Under the existing classification, a mailer pays either a per-pound charge or a minimum-per-piece charge, whichever is greater. This structure means that light pieces pay the minimum-per-piece rate, while heavier pieces pay the per-pound rate. The PRC recommended instead that BRR be divided into light-weight and heavy-weight categories, and it recommended different rates for each.

On March 10, 1981 the Governors issued a *Decision of the Governors of the United States Postal Service on Rates of Postage and Fees for Postal Service* (the "*First Decision*"). It rejected the PRC's First RD.

---

**2.** The PRC consists of five Commissioners appointed by the President with the advice and   consent of the Senate. 39 U.S.C. § 3601.

Among its features which the Governors found objectionable were the PRC's use of the Service-Related Cost (SRC) method for assigning costs to classes of mail, its reduction of the Service's estimate of its revenue requirements, and its classification change for BRR mail. As to the BRR rates recommended by the PRC, the Governors found that the PRC had failed to recommend rates since the recommendations were based on a classification change which the Board considered unauthorized. The Governors therefore ordered the Service to institute temporary rates under § 3641 (the "March BRR rates") and asked the PRC to recommend new rates based on the existing classifications.[3]

There followed a new exchange between the PRC and the Governors. On June 4, 1981 the PRC reiterated most of its earlier proposals, including those regarding BRR rates (the "Second RD"). The Governors rejected the recommendations anew on June 29, 1981 (the "Second Decision").

On September 17, 1981 the PRC again reiterated the same recommendations (the "third RD"). On September 29, 1981 the Governors again refused the PRC's recommendations, but this time promulgated new permanent rates for all classes of mail, including BRR, which were then implemented by the Postal Service.[4] In so doing the Governors acted under authority of § 3625(d), which allows them to "modify" rates recommended by the PRC. Their decision incorporated by reference the earlier Governors' arguments against the PRC's methodology and revenue determination and referred repeatedly to the Service's original request. As to BRR rates, the Governors stated:

> For third-class mail, we are generally ordering into effect the rates which the Postal Service proposed in April 1980.

... The Commission has now, for the third time, recommended to us rates which both we and the Court have found to be incompatible with the structure of third-class bulk mail. ... The rates to which we are modifying are consistent with the existing classification structure approved by us and are fully supported by evidence on the record. They accurately reflect the actual costs of handling the mail while at the same time they make a substantial contribution to the recovery of institutional costs.

> The rates to which we are modifying third-class bulk mail are different from those originally proposed by the Postal Service in one respect. This alteration is incorporated from the Commission's recommendations.

*Decision of the Governors of the United States Postal Service on Rates of Postage and Fees for Postal Service,* September 29, 1981 (the "September 1981 *Decision*"), at 19–21.[5]

Meanwhile, the Second Circuit Court of Appeals had been considering various challenges to the rates put into effect in March 1981 for all classes of mail. On November 2, 1981 it issued its decision. *Newsweek, Inc. v. United States Postal Service,* 663 F.2d 1186 (2d Cir.1981), *cert. granted,* 456 U.S. 925, 102 S.Ct. 1969, 72 L.Ed.2d 439 (1982). The *Newsweek* decision held first that the costing methodology which had been imposed on the PRC by a decision of the D.C. Circuit,[6] although possibly appropriate, was not required by the Act. *Newsweek* also held that the PRC had exceeded its authority in basing its recommendations on a lowered estimate of Postal Service revenue requirements. Finally, *Newsweek* upheld the Postal Service's use of its temporary rate authority for the March BRR rates.

---

**3.** The rates for other classes of mail were allowed under protest and referred back to the PRC, under § 3625(c).

**4.** The rates pursuant to this decision took effect on November 1, 1981, and the parties have referred to them as the November rates.

**5.** The change incorporated from the PRC's recommendations was the elimination of the distinction between ordinary matter and books and catalogues.

**6.** *National Association of Greeting Card Publishers v. United States Postal Service,* 607 F.2d 392 (D.C.Cir.1979), *cert. denied,* 444 U.S. 1025, 100 S.Ct. 688, 62 L.Ed.2d 659 (1980).

[T]he PRC recommended third class bulk rates which were inconsistent with the existing classification schedule . . . . The Board properly disregarded these changes which were, legally and practicably speaking, impossible to implement. Once these changes were disregarded, the Board acted properly in filling the gaps by establishing temporary rates pursuant to its authority under Section 3641(a).

663 F.2d at 1206–07 (footnote omitted). *See also Advertisers Distribution v. United States Postal Service*, 526 F.Supp. 699, 702 (D.D.C.1981) (on motion for preliminary injunction) *aff'd, Newsweek, supra*.[7]

The September 1981 *Decision* of the Governors was reviewed by the Court of Appeals in *Time, Inc. v. United States Postal Service*, 685 F.2d 760 (2d Cir.1982). For most classes of mail, the *Time* decision left in effect the November modified rates but remanded to the Postal Service, either "for additional explanations and justifications" which were deemed necessary to judicial review or for a new round of PRC recommendations. 685 F.2d at 773–776. The court reached a different conclusion as to the BRR rates. Under § 3625(d), the Governors may exercise their modification authority only upon a PRC Recommended Decision. Since, as *Newsweek* had held, the PRC's recommendations on BRR rates were based on invalid assumptions, they did not constitute a valid Recommended Decision which the Governors might "modify" under § 3625(d). *Time, supra*, 685 F.2d at 773. The *Time* court reiterated the *Newsweek* holding that the Board was authorized to enact temporary BRR rates under § 3641. It quoted the "limitations" on temporary rates in § 3641(b)–(d) and concluded:

Under these guidelines, the third class bulk mail rates adopted by the Board in its [Third] Decision would clearly be permissible as temporary rates. Accordingly, the Board may retain these rates should it wish as temporary rates under section 3641.

685 F.2d at 769. The court added in a footnote:

In light of our holding that the Board lacked authority to implement permanent third class bulk rates, we do not address several claims that those rates are unlawful because they are unsupported by substantial evidence in the record.

685 F.2d at 768 n. 7.

On August 3, 1982 the Board implemented as temporary BRR rates the same rates it had promulgated under the September 1981 *Decision*. Resolution No. 82–6 of the Board of Governors of the United States Postal Service (August 3, 1982) (the "August 1982 Resolution"). The Resolution stated that the Board was acting "in accordance with" the *Time* decision in "determin[ing]" that the rates which are in effect for [BRR] mail shall remain in effect as temporary rates." The Board set forth no explanations of its action. DMMA promptly instituted this action challenging the temporary BRR rates as inconsistent with § 3641.

On December 23, 1982 the PRC issued an *Opinion and Recommended Decision on Bulk Third-Class Rates*. While reiterating its objections to the classification schedule, the PRC has now recommended BRR rates that conform to the existing classifications. Accordingly the temporary rates which are the subject of this litigation must expire under § 3641(d) within 150 days of December 23.

## DISCUSSION

### A. Jurisdiction

█ The Postal Service contends that the district court lacks jurisdiction to hear this challenge because in *Time* the Court of Appeals retained jurisdiction. The Postal Service invokes the principle that bifurcated jurisdiction between district courts and courts of appeals is not favored. The application of that principle in postal rate cases has always involved issues which were being considered by a court of appeals under § 3628, governing appeals from decisions of

---

7. The *Advertisers Distribution* case was transferred to the Second Circuit on appeal. *See*

*Newsweek, Inc. v. United States Postal Service*, 652 F.2d 239 (2d Cir.1981).

the Governors on permanent rates. District courts have rejected attempts at simultaneous challenge of the same decisions under § 409, which gives the district courts jurisdiction "[e]xcept as provided by section 3628." *Advertisers Distribution v. United States Postal Service,* 526 F.Supp. 699, 702 (D.D.C.1981), aff'd, *Newsweek, supra; Direct Mail Marketing Association v. United States Postal Service,* 524 F.Supp. 1219, 1224 (S.D.N.Y.1981), aff'd, *Time, supra; United Parcel Service v. United States Postal Service,* 524 F.Supp. 1235, 1246 (D.Del.1981); *Reader's Digest Association v. United States Postal Service,* 501 F.Supp. 126, 129 (D.D.C.1980). *See Oljato Chapter of Navajo Tribes v. Train,* 515 F.2d 654, 660 (D.C.Cir.1975) (litigants could not challenge in district court issues reserved for direct appeal to the courts of appeal). This case presents a different situation.

I find that the argument opposing the district court's jurisdiction is not well taken. The *Time* court retained jurisdiction over the issue which was before it in that case, in particular the validity of the Governors' September 1981 modifications under § 3625(d). The August 1982 Resolution promulgating temporary BRR rates had not yet been made and was not before the *Time* court. This is not altered by the *Time* court's suggestion in dictum that such action would be lawful. Second, the *Time* decision's reasons for retaining jurisdiction do not apply to BRR rates. Having concluded that additional explanations and justifications were needed to permit judicial review of the September 1981 modified rates, the court retained jurisdiction to permit the Postal Service to adhere to its modifications and to offer the explanations the court had found wanting. 685 F.2d at 775 n. 25. But that possibility was not available for the BRR rates, since the court found that the Postal Service lacked authority to implement modified BRR rates. Third, the

*Time* court's disposition as to the BRR rates shows that it did not intend to retain jurisdiction over them. The other rates remained in effect, as § 3628 forbids a court from suspending permanent rates "until final disposition of the suit." 685 F.2d at 773 & n. 23. But the BRR rates were to lapse after 45 days unless the Postal Service implemented temporary rates. 685 F.2d at 769. The Court of Appeals thus evidently concluded that its disposition of the BRR rates was final.[8] I conclude that jurisdiction was not retained as to this issue and that the district court may properly act.

B. The effect of *Time* on the merits

■ The Postal Service also contends that the *Time* decision conclusively adjudicates this controversy by virtue of that court's expressed approval of adopting the September 1981 BRR rates as temporary rates. *See supra* at 7 (quoting passages from the *Time* opinion). The *Time* court, however, was speaking prospectively in dictum. The action now under review had not yet been taken. Possible objections to it, or to the manner in which it would be carried out, were not before that court. As I read the language in question, it amounted to a suggestion of a way to proceed. I do not read those words as binding either the Court of Appeals or this court when the action there suggested would be taken and submitted for review. Furthermore, the holding that the Board lacked power to modify the BRR rates precluded the court from considering substantive questions as to these particular rates. 685 F.2d at 768 n. 7. While the *Time* opinion certainly expresses the view that the present rates are compatible with § 3641, that expression does not constitute an adjudication on the merits of questions which might be raised in future litigation.

8. Furthermore, the § 3641 temporary rate order at issue in this case is not the kind of order reserved to the courts of appeals by § 3628. *See Advertisers Distribution v. United States Postal Service,* 526 F.Supp. 699, 702 (D.D.C. 1981) (addressing the problem of bifurcated jurisdiction as to § 3625 orders but not as to § 3641 orders). *See also Mail Advertising Corporation of America v. United States Postal Service,* 459 F.2d 1182 (D.C.Cir.1972) (per curiam) (distinguishing the modes of review).

822

## C. The temporary rates

DMMA's objections to the temporary BRR rates are of three orders. First, DMMA contends that the August 1982 Resolution implementing the rates is invalid for its failure to make findings and explain the basis. Second, DMMA argues that the Postal Service ought to have relied on certain findings of the PRC in setting its temporary rates. Finally, DMMA maintains that the rates are substantively not in compliance with the policies of the Act.

■ The Board's resolution of August 3, 1982 is a skimpy document which, within its borders, sets forth no explanations or justifications. DMMA argues that it violates the requirement that an agency provide a reasoned explanation of its actions and demonstrate that they are consistent with the statute. *SEC v. Chenery Corp.*, 318 U.S. 80, 94, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943); DMMA Memorandum at 16–18.

Counsel for the Postal Service argues a rigid position that the promulgation of temporary rates under § 3641 does not require any findings or explanations whatsoever. Postal Service Memorandum at 23–24. Since I read the new resolution as incorporating the matter set forth in the Service's prior requests and decisions and conclude that these findings and references sufficiently justify the temporary promulgation, I need not decide whether the Service is exempt, as it contends, from any obligation of justification in the promulgation of temporary rates.

■ In the context of the extended dispute over these rates, the Board's laconic resolution was intended to incorporate prior findings of the Postal Service and may be evaluated in that light. The August 1982 Resolution re-adopts (although on a temporary basis) rates originally adopted in the September 1981 *Decision.* There the Governors expressly found that the BRR rates were supported by the record, reflected actual costs, and contributed to overhead. They also made it clear in the September 1981 *Decision,* as Judge Sofaer noted in an earlier consideration of these rates, that

they relied on the Postal Service submissions in connection with its original *Request* to the PRC. *Direct Mail Marketing Association v. United States Postal Service,* 524 F.Supp. 1219, 1225 (S.D.N.Y.1981) (dictum), aff'd, *Time, supra,* 685 F.2d at 769. The original request, in turn, included testimony on BRR rates and on proper inter-class and intra-class cost apportionment. *See Request,* Attachment I, Part 1 (detailing the bases for Postal Service findings that its requested rates comply with the Act). The September 1981 *Decision* departed from the original request in only one respect, and it justified that departure by referring to the PRC record (*see* note 5, *supra*). In my view the cumulative effect of the Postal Service's actions amounts to an adequate finding, on a record, that the BRR rates are consistent with the policies of the Act and necessary to provide adequate revenue. This is a case of administrative action which the court must uphold although "of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.,* 419 U.S. 281, 286, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974), *quoted in Time,* 685 F.2d at 773. *See also Greater Boston Television Corp. v. FCC,* 444 F.2d 841, 851 (D.C.Cir.1970), *cert. denied,* 403 U.S. 923, 91 S.Ct. 2233, 29 L.Ed.2d 701 (1971), *quoted in Time,* 685 F.2d at 773.

■ The question arises, since the *Time* court found the Service's explanations inadequate to support the rate promulgation there in issue, and since the explanations here relied on are part of the same body of explanations, whether they must be inadequate for this purpose as well.

The contrast between this case and *Time* is significant. First, the rates here at issue are temporary. Temporary rates are an emergency measure of limited duration, promulgated under a special statutory provision allowing the Postal Service to fill a gap until the PRC makes a recommendation in accordance with its obligations. This fact alone justifies imposing on the Service a far less onerous justification requirement. Thus, whereas in *Time* the Court of Appeals

was obliged to evaluate the agency action against the "substantial evidence" test, temporary emergency ratemaking under the Act is incompatible with the substantial evidence test. That test presupposes that the agency will methodically collect the relevant factual data in extended proceedings which offer all interested persons the opportunity to be heard. *See* 5 U.S.C. § 706(2)(E). Temporary ratemaking under the Act is an emergency proceeding which does not entail a widespread, time consuming collection of data. The Act specifies certain limitations, noted above, on the agency's power and most importantly imposes a restrictive time limit on the life of the temporary rates. Thus the fact that the Court of Appeals found the justifications and explanations submitted in *Time* in support of the permanent rates inadequate does not suggest that the same body of explanations would be inadequate in reviewing temporary rates.

A second significant distinction proceeds from the fact that an important part of the inadequacy found in *Time* related to the Service's failure to explain adequately its rejection of the PRC recommendations. As to BRR rates, in contrast, the PRC had made no lawful recommendations. One consequence of this difference was *Time*'s holding that the Service's purported promulgation of modified BRR rates was void since there was nothing to be modified. A second consequence is the absence of presumptively valid recommended rates whose rejection must be justified. Thus to the extent that the remand in *Time* depended on the failure to justify rejection of the PRC's proposals, that decision has no bearing on this case.

■ DMMA also argues that the temporary rates are defective because the Postal Service failed to rely on the findings of the PRC. DMMA Memorandum at 18–22. It argues that, although the PRC recommendations were defective, some of its determinations are severable and the Postal Service must rely on them. DMMA points particularly to various "fairness" questions whose consideration logically precedes the actual setting of rates and argues that the Postal

Service must bear "a heavy burden" to justify any departure from those determinations. DMMA relies on those aspects of *Time* which placed such a "heavy burden" on the Service to justify its rejection of the PRC's methodology in promulgating modified rates, 685 F.2d at 774, and which found that the Service was required to justify its modification on the basis of the record before the PRC as well as the Service.

Such a burden is inappropriate in the context of temporary rates, which merely fill the gap until the PRC submits a lawful recommendation. Indeed, since the adoption of temporary rates presupposes a failure on the part of the PRC to submit recommendations, the statutory framework of temporary ratemaking obviously cannot require adherence to findings of the PRC. Section 3641(a) imposes the limitation that temporary rates must be based on the requested rates the Service has proposed to the PRC. In contrast § 3628 requires that the Governors' decisions on permanent rates be reviewable "on the record before the Commission and the Governors."

In addition, the breadth of the dispute between the Postal Service and the PRC would make it very difficult for the Service to rely on the PRC's findings. The Service would be required to separate out and disregard the PRC's estimate of revenue requirements, its method of assigning costs to services, and its classification of BRR mail, and then to speculate how the PRC would have acted under different assumptions as to these matters. Such a requirement would be preposterous and impracticable. As the Second Circuit noted in approving the March temporary rates in the *Newsweek* decision, "the net effect" of the PRC's BRR recommendations "was the same as a failure by the PRC to submit a recommended decision." 663 F.2d at 120 n. 16.

■ Finally, DMMA contends that the temporary rates are substantively invalid under § 3641.

The scope of judicial review is narrow. The parties have not directed their attention to defining it. In *Newsweek* the Court of Appeals upheld the temporary March rates with little discussion, 663 F.2d at

1206–07. In *State of Maine v. United States Postal Service*, 405 F.Supp. 551, 561 (D.D.C.1975), *aff'd sub nom. National Association of Greeting Card Publishers v. United States Postal Service*, 569 F.2d 570, 602–03 (D.C.Cir.), *vac'd on other grounds*, 434 U.S. 884, 98 S.Ct. 253, 54 L.Ed.2d 169 (1976), a district court upheld temporary first class rates, after approving the Postal Service's methodology, where the opponents could not show that the Postal Service had "applied these principles incorrectly, arbitrarily, with bias, or with inadequate evidentiary support."

DMMA has neither pointed to any respect in which these temporary rates are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," *see* 5 U.S.C. § 706(2)(A), nor shown that "the decision was [not] based on a consideration of the relevant factors ... [or that] there has been a clear error in judgment," *see Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971).

DMMA has presented virtually no specific contentions addressed to the substantive validity of the temporary BRR rates. As to the element of the rates which DMMA particularly singles out in its attack, the 3.0-cent discount for carrier-route presorted mail, the Postal Service relies adequately on the testimony and working papers of Don Allen, submitted with the Postal Service's *Request,* in which Allen explained that the new per-piece rates and discounts maintained the "spread" among the three classes of BRR mail. *Request,* testimony of Don S. Allen, at 109–113, tables 28 & 29.

Faced with the Postal Service's motion for summary judgment, DMMA has failed to make any other specific objections to the rates and to their foundation in the record. DMMA has failed to show that any material issue of fact justifies denial of the Postal Service's motion for summary judgment.

## CONCLUSION

DMMA's motion for summary judgment is denied. Summary judgment for the Postal Service is granted.

SO ORDERED.